THE WOLF COMPANY v. THE SMITH MERCANTILE COMPANY.

(Filed 25 March, 1925.)

**1. Contracts, Written—Fraud—Evidence.**

Where a corn-meal mill is the subject of a written contract of sale and purchase, and sought to be set aside for fraudulent representations of the seller in its procurement as to the quantity and quality of its daily output, the alleged fraud goes to the validity of the written instrument as a binding contract, and evidence is competent to sustain the allegations of fraud, irrespective of the written expressions of the agreement that would otherwise exclude it.

**2. Same—Damages—Election of Remedies.**

Where the defendant, in plaintiff's action to recover the purchase price of a corn-meal mill, attacks the validity of the contract itself for fraud, he may at his election rescind the trade, wherein he may recover the purchase price or such portion as he may have paid, or avail himself thereof as a defense in bar of recovery of the purchase price or a part thereof remaining unpaid, or he may hold the seller for the damages he may have sustained in consequence of the fraud.

**3. Same—Negotiations.**

Where the written contract of sale for a corn-meal mill is sought to be set aside for fraud in its procurement, evidence of verbal and written communications between the accredited representatives of the parties extending over the time inclusive, from the first to the last of those forming the negotiations leading up to the execution of the written instrument, is competent and not confined to those contemporaneous with the execution of the contract of sale and purchase.

**4. Same—Damages—Evidence.**

   Where a written contract for the sale of a corn-meal mill has been vitiated for fraud, and in the seller's action to recover the balance of the purchase price the purchaser alleges damages arising from the former's fraudulent representations as to the daily capacity of the mill, etc., it is competent for the purchaser to show his loss by reason of the failure of the mill to come up to the seller's representations of its daily output, and his expenditures necessary to put it in operation to produce the results obtained.

**5. Same—Measure of Damages.**

   In this case, *held*, the measure of the purchaser's damages upon the fraudulent representations of the seller of a corn-meal mill in the procurement of the contract was the difference between what the mill was actually worth and what it would have been worth if it had been as represented, with such additional damages as would have reasonably been foreseen by the parties at the time they made the contract, and which would naturally grow out of the failure of the seller's representations to be true.

APPEAL by plaintiff from judgment rendered by *Daniels, J.,* at October Term, 1924, of SAMPSON.

Action upon note, dated 10 November, 1921, due on demand, with interest from date, payable to plaintiff, execution of which by defendant is admitted. It is admitted that the consideration for said note is balance due on contract price for machinery sold to defendant by plaintiff, as a corn-meal mill, during the summer of 1920. Note sued on was given in renewal of original notes for purchase price of said machinery. Defendant, as a defense to plaintiff's cause of action, and by way of counterclaim, alleges that at time of purchase of said corn-meal mill plaintiff falsely and fraudulently represented to defendant that said corn-meal mill, when fully equipped, properly installed, and skillfully operated by a competent miller, would produce 200 bushels of good table meal per day of ten hours; that said mill, so equipped, installed and operated, produced only an average of 90 bushels of meal per day; and that by reason of said false and fraudulent representations, defendant sustained damages in the sum of $3,607.45. Defendant demands judgment that it recover of plaintiff damages in said sum.

The contract between plaintiff and defendant was in writing, signed by plaintiff and defendant on 12 November, 1920, and contains no representations or warranties with respect to the capacity of said mill or the quality of the meal it would produce. It contains the following clause:

"It is agreed and declared by the parties hereto that this agreement is the full, complete, final and only agreement between them, and embodies, embraces and merges all former understandings, agreements and contracts between them, oral or written, expressed or implied, of any

and every sort or kind, and that no contemporaneous agreement of any sort or kind exists between said parties which is not herein fully expressed or which was an inducement to the execution of this contract."

Plaintiff, in its reply, denied each and all the allegations set up as new matter in the answer by way of defense and as counterclaim, and demanded judgment that it recover of defendant the amount due on said note.

The issues submitted to the jury, with answers thereto, were as follows:

"1. What amount, if any, is defendant indebted to plaintiff? Answer: '$1,906.23.'

"2. Was the execution of the contract between plaintiff and defendant procured by the fraudulent representations of plaintiff, as alleged in the answer? Answer: 'Yes.'

"3. If so, what damages has defendant sustained? Answer: '$2,650.00.' "

Upon the foregoing verdict, judgment was rendered that defendant recover of plaintiff the sum of $743.77, with interest thereon from 20 October, 1924, and costs, and that defendant is the owner of the corn-meal mill described in the contract offered in evidence, freed and discharged of all claims or demand of plaintiff.

From this judgment plaintiff appealed, assigning errors based on exceptions to the admission of evidence during the trial. There were no exceptions to the instructions of his Honor to the jury.

*Faircloth & Fisher for plaintiff.*
*Butler & Herring for defendant.*

CONNOR, J. Defendant alleges that the contract by which plaintiff sold to it the corn-meal mill, for the purchase price of which the note sued on was given, was procured by fraudulent representations, as set out in the answer. It seeks to recover of plaintiff damages which it alleges it has sustained in consequence of such representations, and sets up such damages as a counterclaim to the note. Defendant relies upon the law as stated by *Justice Hoke* in *May v. Loomis,* 140 N. C., 352:

"Where a sale has been effected by an actionable fraud, the purchaser has an election of remedies. He may ordinarily, at least at the outset, rescind the trade, in which case he can recover the purchase price or any portion of it he may have paid, or avail himself of the facts as a defense in bar of recovery of the purchase price, or any part of it, which remains unpaid, or he may hold the other party to the contract and sue him to recover the damages he has sustained in consequence of the fraud." 13 C. J., 395.

Plaintiff assigns as error, committed in the trial of this action, the admission by his Honor, over its objections and subject to its exceptions, of the testimony of witnesses offered by defendant as to statements made to the president of defendant company, prior to the execution of the contract, by the salesman of plaintiff company, contending that same were incompetent and inadmissible, for that they tended to contradict, add to, and alter the written contract between the parties. Defendant neither alleged nor offered to prove a warranty. It alleged fraudulent representations, made by plaintiff to procure the execution of the contract. The testimony offered was competent and admissible to establish the truth of these allegations, and the assignments of error are not sustained. *Machine Co. v. Feezer,* 152 N. C., 516; *Unitype Co. v. Ashcraft,* 155 N. C., 64; *Machine Co. v. Bullock,* 161 N. C., 3. "Where the execution of the contract is produced by fraud, a party is not bound by any clause precluding him from setting up false and fraudulent representations within a proper and reasonable time." 13 C. J., 394.

The learned counsel for plaintiff, in his brief filed in this Court, states that he is advertent to authoritative decisions of this Court holding that oral testimony of conversations contemporaneous with the execution of a contract in writing are admissible as evidence, where there are allegations of fraud in the procurement of the execution of the contract. He insists, however, that testimony of conversations had between the parties or their representatives offered as evidence of fraudulent representations a "considerable time" before the execution of the written contract are not admissible. In this case the negotiations resulting in the sale of the machinery were begun in the summer of 1920; the machinery was shipped by plaintiff to defendant in October, 1920; the written contract was executed 12 November, 1920; the mill was installed during December, 1920, and operations begun 1 January, 1921. Defendant's evidence was to the effect that the fraudulent representations were made when the negotiations were begun. The admissibility of the testimony is not dependent upon the time when the oral representations were made, with respect to the date of the signing of the written contract. The conduct of the parties, their words and deeds throughout the entire treaty may be shown to the jury upon the issue of fraud. *Knight v. Houghtalling,* 85 N. C., 17.

Plaintiff also assigns as error the admission of evidence, over its objections and subject to its exceptions, tending to show damages resulting from the fraudulent representations alleged, and the amount of such damages. The testimony that if the mill had had a daily capacity of 200 bushels, as represented, defendant would have made a profit of from $200 to $250 per month, whereas, with a daily capacity of only 90 bushels, it could not operate the mill without loss, was competent to

sustain the allegation that defendant had been damaged. The testimony that defendant spent over $1,700 in the necessary equipment and installation of the mill was competent as tending to show the amount of damages sustained, there being evidence that such expenditures were not only necessary, but were in the contemplation of the parties at the time the sale was made. The contract price of the machinery sold to defendant by plaintiff was $3,239.28; the amount spent by defendant for freight, lumber, belts, and labor in equipping and installing the mill was $1,774.63, making the total cost of the mill to defendant $5,013.91. Without these additional expenditures, the machinery sold to defendant by plaintiff would have been worthless to defendant. There was evidence that the mill, when completed, fully equipped and properly installed, was worth only about one-half what a mill with the capacity to produce 200 bushels of meal per day would have been worth. Upon the third issue the court instructed the jury as follows:

"Ordinarily, in an action of this sort, where this kind of defense is set up and it is insisted that defendant has been injured by the fraudulent conduct of plaintiff, the measure of damages is the difference between what the machinery was actually worth and what it would have been worth if it had been as represented, with such additional damages as would be reasonably foreseen by the parties at the time the contract was entered into, and which naturally grew out of the failure of the representations to be true. The purpose of the law is to give the defendant, if entitled to damages at all, such damages as will compensate him for the actual loss sustained, which could have been reasonably foreseen by the parties at the time the representations were made."

There was no exception to this instruction. It is a correct statement of the law applicable to facts which the jury could find from the evidence. There was no error in the admission of the testimony as evidence, and the assignment of error is not sustained.

There was no error in the admission of the letters from defendant to plaintiff, and from plaintiff to defendant in reply. They were competent as evidence upon the second issue, as tending to show not only that representations were made as to the capacity of the mill, but also that plaintiff knew that the representations were false. In its letter dated 8 November, 1921, defendant wrote to plaintiff as follows: "We cannot pay these notes. As heretofore advised, this mill was bought under guaranty to grind from 12 to 15 bushels per hour of whole corn, and with cracker attachment the output was guaranteed to be increased not less than 25 per cent. This should have yielded a daily output on 10 hours run of approximately 200 bushels. We were never able to get the mill to turn out over half this amount." In reply, plaintiff, in its letter dated 10 November, 1921, says: "We note what you say with

reference to the capacity of the mill, and in reply would state that we have thousands of such mills in operation, and they are giving entire satisfaction and doing just exactly what they are represented to do. All that the machinery required is proper handling, and it will do just exactly as represented."

Plaintiff by its appeal presents to this Court for review only assignments of error made upon exceptions taken during the trial to matters of law or legal inference. There was competent evidence tending to sustain the allegations in the answer. The charge of the learned and careful judge who presided at the trial was without error. The judgment is affirmed. There is

No error.