GILES R. WILKINS AND BESSIE L. WILKINS v. COMMERCIAL FINANCE
COMPANY, INC.

(Filed 25 March, 1953.)

**1. Pleadings § 24a—**

In order to prevail, plaintiff's proof must correspond substantially with
the allegations of his complaint, since proof without allegation is as un-
availing as allegation without proof.

**2. Trial § 23f—**

Objection that there is material variance between the allegations of the
complaint and the evidence of plaintiff is properly raised by a motion for
a compulsory nonsuit, since in such event there is a failure of proof on the
cause of action alleged.

**3. Chattel Mortgages and Conditional Sales § 17—**

Where mortgagor admits default in the payment of an installment due on
the note secured he may not contend that mortgagee unlawfully converted
the chattel to its own use because of the repossession and sale of the chat-
tel by the mortgagee in accordance with the terms of the instrument.

**4. Fraud § 12: Evidence § 39—Alleged parol promise of mortgagee to pro-
cure collision insurance held precluded by written instruments exclud-
ing any such agreement.**

Plaintiffs alleged that mortgagee promised to procure collision insurance
on the automobile when in truth the mortgagee did not intend to do so
at the time the representation was made, and that the car was damaged in
a collision. Plaintiffs sought to recover on the theory of fraud. The mort-
gagee alleged and introduced in evidence written memorandum signed by
plaintiffs, together with promissory notes and chattel mortgages executed
by them, subsequent to the oral negotiations, which together exclude any
promise on the part of the mortgagee to provide insurance but stipulated
in the chattel mortgage that the mortgagors would keep the car insured,
and stipulated in the memorandum that plaintiffs had been told that there
was no insurance in force on the car. Plaintiffs admitted the execution of
the instruments and did not attack them for fraud. *Held:* It must be con-
clusively presumed that the writings supersede any prior oral agreements
of the parties, and, since they exclude any promise on the part of the mort-
gagee to provide insurance on the car, there is material variance between
plaintiffs' allegations and proof, and compulsory nonsuit was properly
entered.

**5. Usury § 1—**

Usury does not invalidate a contract, but simply works a forfeiture of
the entire interest and subjects the lender to liability to the borrower for
twice the interest paid. G.S. 24-2.

APPEAL by plaintiffs from *Crisp, Special Judge,* at April Term, 1952,
of FORSYTH.

Civil action to recover damages for fraud.

The plaintiffs Giles R. Wilkins and Bessie L. Wilkins are husband and wife. They reside in Winston-Salem. The defendant Commercial Finance Company, Inc., has an office in Winston-Salem, where it makes loans on the security of automobiles and purchases promissory notes and chattel mortgages at discounts from automobile dealers. The C. W. Myers Trading Post, Inc., maintains a place of business in Winston-Salem, where it traffics in used automobiles.

Certain events antedating this litigation are virtually undisputed. They are set out in the numbered paragraphs which immediately follow.

1. The plaintiffs acquired a used Ford car from the C. W. Myers Trading Post, Inc., on 22 April, 1950, in transactions accompanied by four contemporary documents, namely, a bill of sale, a promissory note, a purchase-money chattel mortgage, and a stipulation.

2. The bill of sale was executed by the male plaintiff and the C. W. Myers Trading Post, Inc. When its recitations are recast in the past tense, the bill of sale states that the sale price of the Ford car was $1,815.00; that the plaintiffs paid the C. W. Myers Trading Post, Inc., $915.00 on the sale price, leaving $900.00 due on it; that this unpaid portion of the sale price and unspecified "carrying charges" thereon amounting to $434.40 totaled $1,334.40 and were financed under a contract payable in 24 monthly installments of $55.60 each; and that the contract was sold to the defendant Commercial Finance Company.

3. The promissory note was executed by both of the plaintiffs. They thereby promised "to pay to the C. W. Myers Trading Post, Inc., or order, the sum of . . . $1,334.40 . . . in 24 monthly installments of $55.60 each, on the 22nd of each month, beginning on May 22, 1950," and agreed that a failure on their part to pay any single installment at its maturity would "cause the entire balance to become due and collectible at the option of the holder."

4. The purchase-money chattel mortgage was executed by both of the plaintiffs as mortgagors to the C. W. Myers Trading Post, Inc., as mortgagee. This instrument conveyed the Ford car to the mortgagee as security for the payment of the promissory note mentioned in the preceding paragraph and vested in the mortgagee power to do these things in case of "default . . . in the payment of any installment of said note": (1) To take possession of the Ford car and sell it by public auction for cash "after posting notice of sale in three public places for twenty days"; and (2) to apply the proceeds arising from the sale to the satisfaction of the costs of sale and the note. The purchase-money chattel mortgage stated in express terms that the mortgagors would keep the Ford car insured against any loss which the mortgagee required in such amount and in such company as the mortgagee directed; that the mortgagee was under no duty to secure any type of insurance on the Ford car; that the

mortgagee could assign the chattel mortgage and the note secured by it to any bank, finance company, or individual; and that the mortgage and the note secured by it contained the entire agreement of the parties.

5. The stipulation was penciled on a printed desk calendar sheet, recited that "we have been told we have no insurance of any kind and all papers were filled out before we signed to pay $55.60 a month for 24 months," and was subscribed by both of the plaintiffs.

6. The C. W. Myers Trading Post, Inc., executed an endorsement on the purchase-money chattel mortgage in these words and figures: "The . . . chattel mortgage, together with the note secured thereby, transferred, set over, and assigned to Commercial Finance Co. . . . this 24th day of April, 1950."

7. The plaintiffs paid all installments maturing on the note from 22 May to 22 November, 1950, both inclusive. But they did not pay the installment of 22 December, 1950, or any later installments.

8. The Ford car was substantially damaged in a collision with another motor vehicle on 2 December, 1950. No collision or other insurance was then outstanding upon it.

9. The defendant took possession of the Ford car shortly after the collision. Thereafter, to wit, on 22 March, 1951, the defendant sold the Ford car to a third person by public auction for cash after due advertisement under the power of sale in the purchase-money chattel mortgage, and applied the net proceeds of the sale, *i.e.*, $383.00, to the note.

Subsequent to these events, to wit, on 24 August, 1951, the plaintiffs brought this action against the defendant. The pleadings consisted of a complaint, an answer, and a reply.

The complaint ignores the bill of sale, the promissory note, the purchase-money chattel mortgage, and the stipulation mentioned in the paragraphs numbered 1, 2, 3, 4, and 5. It alleges in detail that on 22 April, 1950, the plaintiffs were induced by the fraud of the defendant to borrow $900.00 from the defendant on the security of their Ford car under a contract whereby the plaintiffs agreed to pay the defendant $1,334.40 for the loan in 24 monthly installments of $55.60 each and whereby the defendant promised to procure and keep in force pending the payment of all of the 24 installments a policy of collision insurance insuring the plaintiffs against loss or damage exceeding $50.00 caused by the collision of their Ford car with any other object; that the fraud of the defendant consisted in promising the plaintiffs to obtain the policy of collision insurance and to maintain it in force according to the contract when the defendant actually had the undisclosed intention not to perform the promise; that the defendant did not, in fact, perform its promise respecting the policy of collision insurance; that the plaintiffs, who believed that the defendant had kept its promise respecting the collision insurance,

paid the defendant $389.20 in satisfaction of the installments maturing on the loan from 22 May until 22 November, 1950, both inclusive; that the Ford car of the plaintiffs was practically demolished in a collision with another vehicle on 2 December, 1950; that the plaintiffs thereupon ascertained for the first time that the defendant had failed to perform its promise respecting collision insurance; that the defendant seized the Ford car against the will of the plaintiffs shortly after the collision and converted the same to its own use; and that the plaintiffs suffered substantial actual damages as the immediate consequence of the fraud of the defendant and its conversion of their car to its use. The complaint prayed judgment against the defendant for actual damages amounting to $1,254.20, and punitive damages totaling $15,000.00.

The answer denied all of the material allegations of the complaint. It averred, moreover, as a further defense and counterclaim that the plaintiffs bought the Ford car from the C. W. Myers Trading Post, Inc., for a time price of $2,249.40 under the bill of sale specified in numbered paragraphs 1 and 2; that the plaintiffs paid $915.00 to the C. W. Myers Trading Post, Inc., on the time price, leaving $1,334.40 unpaid thereon; that the plaintiffs thereupon executed the promissory note for $1,334.40 and the purchase-money chattel mortgage mentioned in numbered paragraphs 1, 3 and 4 to the C. W. Myers Trading Post, Inc., to evidence the unpaid portion of the time price, and to secure its payment; that the defendant subsequently purchased the promissory note and the purchase-money chattel mortgage from the C. W. Myers Trading Post, Inc.; that it was stipulated in the purchase-money chattel mortgage and the stipulation mentioned in the paragraphs numbered 1, 4, and 5 that neither the C. W. Myers Trading Post, Inc., nor the defendant was under any duty to obtain or maintain insurance of any kind on the Ford car; that the defendant sold the Ford car under the power of sale embodied in the chattel mortgage as stated in the paragraph numbered 9 because of default in the payment of the installments maturing in December, 1950, and subsequent months, and applied the net proceeds of the sale, i.e., $383.00, to the note; that the sum of $562.20 is still due on the note. The answer prayed for judgment against the plaintiffs on the counterclaim for $562.20.

The reply denied the material averments of the further answer and counterclaim. It asserted specially that the plaintiffs bought their Ford car from the C. W. Myers Trading Post, Inc., under an oral contract for a cash price of $1,815.00; that they borrowed $900.00 of that sum from the defendant under the circumstances delineated in the original contract; that the several papers mentioned in the answer did not constitute a contract on the part of the plaintiffs with either the C. W. Myers Trading Post, Inc., or the defendant; and that the papers mentioned in the answer

were drawn by the defendant and signed by the plaintiffs after they had made the contract set out in the complaint merely to make it appear that the transaction was a discount or sale rather than a usurious loan at a rate of interest vastly greater than the legal rate.

Both sides introduced evidence on the trial of the action before Judge Crisp and the jury at the April Term, 1952, of the Superior Court of Forsyth County.

The testimony adduced by the plaintiffs and clarifying consistent testimony offered by the defendant disclosed all of the matters set forth in the paragraphs numbered 1, 2, 3, 4, 5, 6, 7, 8, and 9.

The plaintiffs were permitted by the trial judge to present additional evidence over the objections and exceptions of the defendant tending to show that these events occurred in this order: That the male plaintiff visited the place of business of the C. W. Myers Trading Post, Inc., on the morning of 22 April, 1950, and executed a bill of sale, which recited, in substance, that the plaintiffs were buying the Ford car for a cash price of $1,815.00; that the plaintiffs were short $900.00 of the amount needed to consummate the purchase; that the male plaintiff went from the place of business of the C. W. Myers Trading Post, Inc., to the office of the defendant "to get a loan of $900.00" to enable the plaintiffs to pay the C. W. Myers Trading Post, Inc., the cash price of the Ford car in full; that the defendant, acting through its president, made an oral agreement with the male plaintiff to loan the plaintiffs $900.00 on the security of the Ford car under a contract binding the plaintiffs to pay the defendant $1,334.40 for the loan in 24 monthly installments of $55.60 each and obligating the defendant to procure and keep in force pending the payment of all of the 24 installments a policy of collision insurance insuring the plaintiffs against any loss or damage exceeding $50.00 caused by the collision of the Ford car with any other object; that the president of the defendant instructed the male plaintiff to return to the office of the defendant with the *feme* plaintiff on the afternoon of 22 April, 1950, to the end that both the plaintiffs, who were able to read and write, might sign paper writings embodying a contract conforming to the oral agreement made between the male plaintiff and the defendant; that both of the plaintiffs visited the office of the defendant on the afternoon of 22 April, 1950, in obedience to this instruction, and executed the promissory note, the chattel mortgage, and the stipulation mentioned in the paragraphs numbered 1, 3, 4, and 5 in the presence of the president of the defendant without reading them and thereby ascertaining their contents; that the plaintiffs took this course because they were assured, in substance, by the president of the defendant that the three paper writings conformed to the oral agreement made between the male plaintiff and the defendant, and that one of them, which was written by the president of the defendant on

"a little pad," was "an application for insurance" on the Ford car; that the plaintiffs were not told by the president of the defendant or anyone else that they had "no insurance of any kind"; that the plaintiffs made payments totaling $389.20 on the note because they believed that the defendant was performing the oral promise of its president respecting collision insurance; that the plaintiffs did not discover that the defendant had failed to keep this promise until the Ford car had been practically demolished in the collision of 2 December, 1950; and that the defendant seized the Ford car against the will of the plaintiffs subsequent to the collision and refused their demand for its return.

Judge Crisp dismissed the action on a compulsory nonsuit pursuant to the motion of the defendant made when the plaintiffs rested their case and renewed when all the evidence on both sides was in. The plaintiffs excepted and appealed, assigning errors.

*Eugene H. Phillips for plaintiffs, appellants.*
*William S. Mitchell for defendant, appellee.*

ERVIN, J. The assignment of error based on the entry of the compulsory nonsuit is the only one requiring elaboration. The answer to the problem posed by this assignment of error is to be found in this well settled rule of law: "Since a party must succeed, if at all, on the case, claim, or defense set up in the pleadings, regardless of what is disclosed or established by the evidence, proofs, in order to be effectual, must correspond substantially with the allegations of the pleadings. This is true under the codes as well as under the old system of pleading. Proof without allegation is as unavailing as allegation without proof, since, in order to make a case or to entitle a party to relief, both must be present. A party cannot set up one cause of action or defense and succeed on proof of another and different cause of action not pleaded, and, unless cured by amendment, a material variance between the pleadings and the proof is fatal to a claim or defense." 71 C.J.S., Pleading, section 531. See, also, in this connection these relevant decisions: *Moore v. Clark,* 235 N.C. 364, 70 S.E. 2d 182; *Bowen v. Darden,* 233 N.C. 443, 64 S.E. 2d 285; *Maddox v. Brown,* 232 N.C. 542, 61 S.E. 2d 613; *Ingold v. Assurance Co.,* 230 N.C. 142, 52 S.E. 2d 366; *Stafford v. Yale,* 228 N.C. 220, 44 S.E. 2d 872; *Suggs v. Braxton,* 227 N.C. 50, 40 S.E. 2d 470; *Ritchie v. White,* 225 N.C. 450, 35 S.E. 2d 414; *Coley v. Dalrymple,* 225 N.C. 67, 33 S.E. 2d 477; *Roberts v. Grogan,* 222 N.C. 30, 21 S.E. 2d 829; *Whichard v. Lipe,* 221 N.C. 53, 19 S.E. 2d 14, 139 A.L.R. 1147; *Rose v. Patterson,* 220 N.C. 60, 16 S.E. 2d 458. The objection that there is a material variance between the allegations of the complaint and the testimony of the plaintiff is properly raised by a motion for a compulsory

nonsuit. *Suggs v. Braxton, supra; Whichard v. Lipe, supra.* This is so because in such event there is a failure of proof on the cause of action alleged. *Stafford v. Yale, supra.*

It will promote clarity to make these observations at this point: The contention of the plaintiffs that apart from all other considerations the trial judge ought to have left to the jury the question whether or not the defendant unlawfully converted the Ford car to its own use is clearly untenable. Since the plaintiffs admittedly made default in the payment of the installment of 22 December, 1950, and subsequent installments, the defendant had the legal right to detain the Ford and sell it for the satisfaction of the unpaid portion of the debt, even under the version of the dealings of the parties given in the pleadings of the plaintiffs. *Alsbrook v. Shields,* 67 N.C. 333; *Haynes v. Temple,* 198 Mass. 372, 84 N.E. 467.

The plaintiffs bottom their case on the doctrine that the statement of an intention to perform an act, when in truth no such intention exists, constitutes a misrepresentation of a fact, and as such may furnish the basis for an action for fraud if the other essential elements of fraud are present. *Roberson v. Swain,* 235 N.C. 50, 69 S.E. 2d 15; *Williams v. Williams,* 220 N.C. 806, 18 S.E. 2d 364; *Bank v. Yelverton,* 185 N.C. 314, 117 S.E. 299; *Herndon v. R. R.,* 161 N.C. 650, 77 S.E. 683. The gravamen of their complaint is that the plaintiffs and the defendant made a contract whereby the defendant promised to procure and keep in force during a specified period a policy of collision insurance insuring the plaintiffs against loss or damage exceeding $50.00 caused by the collision of their Ford with any other object, and that in making such promise the defendant practiced a fraud upon the plaintiffs in that it actually intended not to perform the promised act.

It is manifest that the testimony adduced by the plaintiffs and the clarifying consistent testimony offered by the defendant negates the cause of action alleged by the plaintiffs if it shows that the contract between the parties is embodied in the promissory note, the purchase-money chattel mortgage, and the stipulation. This is necessarily so for the very simple reason that these writings plainly exclude any promise on the part of the defendant to insure the Ford car for the benefit of the plaintiffs.

This case is much simplified when the judicial gaze is focused steadily on the crucial circumstance that the pleadings of the plaintiffs do not allege that the execution of these documents was procured by fraud, or that, by reason of fraud, they do not express the true intentions of the parties. *Willett v. Insurance Co.,* 208 N.C. 344, 180 S.E. 580; *Hill v. Insurance Co.,* 200 N.C. 502, 157 S.E. 599; *Hardware Co. v. Kinion,* 191 N.C. 218, 131 S.E. 579. When they prepared their complaint, the plaintiffs emulated the ostrich and ignored the very existence of the written

instruments. When they filed their reply, the plaintiffs undertook to decry the legal importance of the writings by the somewhat nonchalant allegation that they did not constitute a contract at all, but were merely manufactured by the plaintiffs and the defendant to make it appear that the transaction between the parties was a discount or sale rather than a usurious loan. We note, in passing, that under G.S. 24-2, usury does not invalidate a contract. It simply works a forfeiture of the entire interest, and subjects the lender to liability to the borrower for twice the amount of interest paid. *Rogers v. Booker,* 184 N.C. 183, 113 S.E. 671.

The evidence under scrutiny indicates that the male plaintiff had oral negotiations with the defendant, which was represented by its president; that the negotiations resulted in an oral agreement whereby the defendant agreed to advance $900.00 to the use of the plaintiffs on the security of the Ford car which they were buying from the C. W. Myers Trading Post, Inc., whereby the plaintiffs consented to pay the defendant $1,334.40 for the advancement in 24 monthly installments of $55.60 each, and whereby the defendant promised to procure and keep in force pending the payment of all of the 24 installments a policy of collision insurance insuring the plaintiffs against loss or damage exceeding $50.00 caused by the collision of the Ford car with any other object; that the plaintiffs executed the promissory note, the chattel mortgage, and the stipulation for the purpose of reducing the oral agreement to writing; and that the plaintiffs were willfully misled into executing these writings without reading them by the false assurance of the president of the defendant that they correctly embodied the oral agreement of the parties.

The pleadings of the plaintiffs do not attack the written instruments for fraud or other invalidating cause. This being true, it must be conclusively presumed under the evidence and pleadings in this particular case that the writings supersede the oral agreements of the parties and express their actual engagements. *Bost v. Bost,* 234 N.C. 554, 67 S.E. 2d 745; *McLawhorn v. Briley,* 234 N.C. 394, 67 S.E. 2d 285; *Potter v. Supply Co.,* 230 N.C. 1, 51 S.E. 2d 908; *Whitehurst v. FCX Fruit and Vegetable Service,* 224 N.C. 628, 32 S.E. 34; *Home Owners' Loan Corp. v. Ford,* 212 N.C. 324, 193 S.E. 279; *Insurance Co. v. Morehead,* 209 N.C. 174, 183 S.E. 606; *Bank v. Sternberger,* 207 N.C. 811, 178 S.E. 595, 97 A.L.R. 720; *Oliver v. Hecht,* 207 N.C. 481, 177 S.E. 399; *Winstead v. Manufacturing Co.,* 207 N.C. 110, 176 S.E. 304; *Ray v. Blackwell,* 94 N.C. 10. Since the writings exclude any promise on the part of the defendant to provide insurance on the Ford car for the benefit of the plaintiffs, there is a material variance between the allegations and the proofs. This being true, the trial judge did not err in dismissing the action upon a compulsory nonsuit.

While the evidence is insufficient to support the cause of action presently pleaded by plaintiffs, it does tend to show that the plaintiffs may have a meritorious cause of action against the defendant under the rule that a false assurance as to the contents of a written instrument constitutes a misrepresentation of a fact, and as such may furnish the basis of an action for fraud if the other essential elements of fraud are present. *Butler v. Fertilizer Works,* 193 N.C. 632, 137 S.E. 813; *Grace v. Strickland,* 188 N.C. 369, 124 S.E. 856, 35 A.L.R. 1296; *McCall v. Tanning Co.,* 152 N.C. 648, 68 S.E. 136; *Jones v. Insurance Co.,* 151 N.C. 54, 65 S.E. 602; *Whitehurst v. Ins. Co.,* 149 N.C. 273, 62 S.E. 1067; *Stroud v. Insurance Co.,* 148 N.C. 54, 61 S.E. 626; *Sykes v. Insurance Co.,* 148 N.C. 13, 61 S.E. 610; *Griffin v. Lumber Co.,* 140 N.C. 514, 53 S.E. 307, 6 L.R.A. (N.S.) 463; *Caldwell v. Insurance Co.,* 140 N.C. 100, 52 S.E. 252; 23 Am. Jur., Fraud and Deceit, section 96. Whether the plaintiffs should bring a new action against the defendant upon a complaint conforming to the evidence in this case is a matter for them and their counsel to ponder and decide. If they should take such course, they would do well to note the general rule that ordinarily exemplary, punitive, or vindictive damages are not recoverable in an action for fraud. 37 C.J.S., Fraud, section 144.

The case illustrates anew the oft recurring truth that procedural mishaps befall litigants who shadow box with unrealities in their pleadings.

For the reasons given, the judgment of nonsuit is

Affirmed.