WILLIAM LEE PARKER AND WIFE, MAE ELLEN KENNEDY PAR-
KER v. PAUL A. BENNETT AND WIFE, ZEPHYA P. BENNETT

No. 7623SC336

(Filed 5 January 1977)

1. **Evidence § 32; Fraud § 11— action for fraud — inapplicability of parol evidence rule**

   In an action for fraud in the sale of a farm, evidence of mis-
   representations by defendants that the farm contained 125 acres when
   it actually contained only 95 acres was not inadmissible under the
   parol evidence rule because of statements in the contract of purchase
   that no representations were made as to "precise lot dimensions," the
   parol evidence rule being inapplicable since the evidence of fraud did
   not challenge the accuracy of the terms of the writing but the validity
   of the writing itself.

2. **Fraud § 12— misrepresentation of acreage — summary judgment**

   The trial court erred in granting summary judgment for de-
   fendants in an action to recover damages or to rescind a sale of land
   on the ground of alleged fraudulent misrepresentations by defendants
   as to the acreage of the land since it was for the jury to determine
   whether defendants fraudulently misrepresented the acreage and
   whether plaintiffs relied on such misrepresentation.

APPEAL by plaintiffs from *Graham, Judge.* Judgment en-
tered 5 February 1976 in Superior Court, YADKIN County. Heard
in the Court of Appeals 1 September 1976.

This is a civil action wherein plaintiffs allege in their
complaint that on 30 July 1974 they purchased from defendants
a tract of land known as Green Acre Farm in reliance upon
defendants' oral and written misrepresentations that the farm
contained 125 acres when in actuality and to the defendants'
knowledge the farm contained approximately 95 acres. Plaintiffs
contend they are entitled to $30,000 damages or, in the alterna-
tive, reduction of the purchase price or rescission of the contract.
Defendants answered, denying the allegations of fraud and
asserting as a defense the execution of two purchase contracts
by plaintiffs and defendants on 20 June 1974 and 5 July 1974,
each stating that there had been no representations or warran-
ties made by Paul A. Bennett Realty Company, Inc. or its agents
concerning "precise lot dimensions," and the execution of a
deed from defendants to plaintiffs, which contains no represen-
tations as to precise lot dimensions.

Defendants moved for summary judgment and filed tran-
scripts of the depositions of defendant Paul Bennett and plain-

Parker v. Bennett

tiff William Parker's secretary, Mrs. Windsor. The depositions reveal that Paul Bennett never told plaintiffs the tract contained 125 acres without stating that such figure was his guess, could not be proved, and was subject to survey; that the property had never been completely surveyed because one boundary line was a meandering creek which was difficult to survey; that three boundaries of the land were surveyed in 1968 by Mr. Goldsmith who told defendant Paul Bennett over the phone that the tract contained between 115 and 150 acres; that Goldsmith also wrote defendant Paul Bennett a letter in February 1968 stating the acreage to be "over 100 acres"; that Paul Bennett prepared a map from aerial photographs and wrote on it "one hundred twenty-five acres, more or less, as per survey by Woodrow Goldsmith"; that Paul Bennett gave this map to plaintiffs prior to the sale and also walked the boundaries of the land with plaintiff William Parker prior to the sale; that plaintiff William Parker's secretary called Paul Bennett prior to the sale and asked for a "rundown" on the purchase price ($190,000) of the farm and Paul Bennett told her the value of the property based upon 125 acres but instructed her to indicate that the number of acres was subject to survey; that plaintiff William Parker's secretary typed up the figures but failed to include the "subject to survey" language because she was in a hurry; that Paul Bennett signed the "appraisal" thus prepared by plaintiff William Parker's secretary after the closing as a favor to plaintiffs to help them get a loan on the property; and that defendant Paul Bennett had not noticed the sentence in his own deed to the property which read "containing 95.5 acres, more or less, as per survey in plat by Jessie Lee Mackie, Registered Surveyor, March 5, 1968" and does not believe Mackie ever made a survey of the property.

Plaintiffs filed affidavits of Woodrow Goldsmith stating that he had never told defendants that the property contained 125 acres or any amount of acreage except that set out in his letter, and of plaintiff William Parker's father and three brothers stating that they had accompanied plaintiff William Parker when he walked the boundary lines with defendant Paul Bennett and had heard him state that the property contained 125 acres.

The court granted defendants' motion for summary judgment, and plaintiffs appealed.

*White and Crumpler, by Harrell Powell, Jr., Carl F. Parrish, and William G. Ijames, Jr., for the plaintiffs.*

*Peebles and McConnell, by Joel C. McConnell, Jr., for defendants.*

MARTIN, Judge.

The sole question presented by this appeal is whether the court erred in allowing defendants' motion for summary judgment. Plaintiffs' action is based on fraud. In their complaint, plaintiffs allege:

"6. That prior to and at the time of the transfer of the title of the above-described property by the defendants to the plaintiffs, the defendants represented to the plaintiffs that the property consisted of 125 acres. That in addition, the defendants furnished to plaintiffs maps representing the property as containing '125 acres, more or less, as per survey by Woodrow Goldsmith, Survey Engineer 9/3/68.' That the defendants on numerous occasions stated that the property contained 125 acres.

"7. That the aforesaid representations of the defendants were not true in fact but were false, and were known by the defendants to be false at the time they were made; that in fact, the tract of land consisted of approximately 95 acres. That these false representations were made by the defendants with the intent to deceive the plaintiffs and to induce the plaintiffs to purchase the said property, and that they did, in fact, deceive the plaintiffs, and in reliance upon them, the plaintiffs purchased the said property from the defendants.

"7. That the plaintiffs would not have entered into the contract except for the trust and confidence they had in the representations of the defendants as to the quantity of the land. That the actual quantity of the land and the falsity of the defendants' representations were not apparent or ascertainable to the plaintiffs upon their inspection of the land. That the plaintiffs reasonably relied on the fraudulent representations as to the amount of acreage, both from the aforementioned maps and oral representations. That because of the material and fraudulent inducements of the defendants, the plaintiffs entered into this contract to their detriment."

Parker v. Bennett

The written instruments, in their chronological order, leading up to the deed of conveyance by Paul A. Bennett and wife to William C. Parker and wife, are as follows:

20 June 1974 — Exhibit A (original) entitled "Offer To Purchase Real Estate" and signed by William C. Parker and Ellen K. Parker

20 June 1974 — Acceptance of offer to purchase signed by Paul A. Bennett and Zephya P. Bennett

1 July 1974 — Plaintiffs' Exhibit No. 3 Appraisal of Green Acre Farm by Paul A. Bennett s/ (illegible) C.R.E.A.

5 July 1974 — Offer to purchase Green Acre Farm signed by William L. Parker, Purchaser, Ellen Kennedy Parker, Purchaser, Paul A. Bennett, Seller, Zephya P. Bennett, Seller

30 July 1974 — Deed from Paul A. Bennett and wife, Zephya P. Bennett, Sellers, to William Lee Parker and wife, Ellen Kennedy Parker

Those instruments designated signed 20 June 1974, one of which is exhibit A and the other plaintiffs' exhibit 6, which are essentially the same, contain the following words:

"It is expressly understood and agreed:

"1. That no representation other than those expressed herein, either oral or written, have been made by Paul A. Bennett Realty Co., Inc., and more specifically, no representations or waranties have been made by Paul A. Bennett Realty Co., Inc., agent, concerning:"

\*     \*     \*

"(c) Precise lot dimensions."

\*     \*     \*

"3. Paul A. Bennett Realty Co., Inc. is not bound by or responsible for any agreement between any of the parties herein unless said agreement is in writing and is signed by an authorized representative of said Paul A. Bennett Realty Co., Inc."

**[1]** Defendants contend that summary judgment was properly granted because plaintiffs' evidence of fraud is inadmissible under the parol evidence rule which states that:

> "When a contract is reduced to writing, parol evidence cannot be admitted, to vary, add to, or contradict the same. But when a part of the contract is in parol and part in writing, the parol part can be proven if it does not contradict or change that which is written." (Citation omitted.) *Stern v. Benbow,* 151 N.C. 460, 462, 66 S.E. 445, 446 (1909).

Consequently, defendants contend that evidence of oral guarantees on the part of defendants was inadmissible due to the specific statements in both purchase contracts that no representations were made as to "precise lot dimensions." We disagree.

The North Carolina Supreme Court has held that

> " . . . *in the absence of fraud* or mistake or allegation thereof, parol testimony of prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new and different contract from the one evidenced by the writing, is incompetent." (Citations omitted.) *Neal v. Marrone,* 239 N.C. 73, 77, 79 S.E. 2d 239, 242 (1953) (emphasis added).

Moreover, it has been stated that

> "[A]n action for fraud inducing the execution of a contract is not on the contract but in tort, and the rule that prior negotiations are merged in the writing does not apply." 4 Strong, N. C. Index 2d, *Fraud,* § 11 (1968).

Therefore, we feel that allegations and evidence as to prior negotiations are competent when relevant to the question of fraudulent intent or deception. See *Fox v. Southern Appliances,* 264 N.C. 267, 141 S.E. 2d 522 (1965).

In *Fox v. Southern Appliances,* Justice Moore stated:

> "No verbal agreement between parties to a written contract, made before or at the time of the execution of such contract, is admissible to vary its terms or to contradict its provision. (Citation omitted.) It will be presumed that the writing merged therein all prior and contemporaneous negotiations. (Citation omitted.) *But parol evidence is admissible to show that a written contract was procured by fraud,*

*for the allegations of fraud challenge the validity of the contract itself, not the accuracy of its terms*—the instrument itself, on the issue of fraud, is the subject of dispute. (Citations omitted.) Fraud alleged as a defense to the enforcement of a written contract is not an attempt to vary or contradict the terms of the contract, for if the fraud be proven it nullifies the contract. (Citations omitted.) 'It is elementary that where a contract or transaction was induced by false representations, the representations and the contract are distinct and separable—that is, the representations are usually not regarded as merged in the contract. . . . ' " *Fox v. Southern Appliances, supra* at 270, 141 S.E. 2d at 525 (emphasis added).

In *Hardware Co. v. Kinion,* 191 N.C. 218, 219, 131 S.E. 579, 580 (1926), Chief Justice Stacy, speaking for the Court, stated the same principle as that expressed in *Fox v. Southern Appliances* when he commented that:

"Most of the evidence offered by the defendant to show his defense and counterclaim was excluded on the hearing for the reason, we apprehend, that it was in conflict with the written instrument, and therefore thought to be incompetent, resting as it does in parol. (Citations omitted.) The rule that no verbal agreement between the parties to a written contract, made before or at the time of the execution of said contract, is admissible to vary its terms or to contradict its provisions (citation omitted), well established and controlling in proper cases (citation omitted), has no application where the validity of the written instrument, as here, is challenged on the ground of fraud. (Citation omitted.) The instrument itself is the subject of dispute."

The North Carolina Supreme Court has also had an opportunity to comment on clauses in contracts that preclude a party from setting up representations made before the contract was executed. In one such case, the Court stated:

" 'Where the execution of the contract is produced by fraud, a party is not bound by any clause precluding him from setting up false and fraudulent representations within a proper and reasonable time.' " *Wolf Co. v. Mercantile Co.,* 189 N.C. 322, 325, 127 S.E. 208, 209 (1925). See also 17 C.J.S., *Contracts,* § 165(a) (1963) and 17 Am. Jur. 2d, *Contracts,* § 191 (1964).

In that same case, the Court also said that:

"The conduct of the parties, their words and deeds through-
out the entire treaty may be shown to the jury upon the
issue of fraud." (Citation omitted.) *Wolf Co. v. Mercantile
Co., supra.*

In *Fox v. Southern Appliances, supra,* like the case at bar,
the plaintiffs stood on the proposition that "where the written
instrument itself precludes the representation relied upon, an
action on such alleged representations cannot be maintained"
and cited 2 Strong, N. C. Index, *Fraud,* § 10 (now 4 Strong,
N. C. Index 2d, *Fraud,* § 11) which was footnoted with the case
of *Wilkins v. Finance Co.,* 237 N.C. 396, 75 S.E. 2d 118 (1953).
*Wilkins* can be distinguished, however, from the case at bar
because in *Wilkins* it is clear that the plaintiffs' pleadings did
not allege that the execution of the documents was procured by
fraud.

In an earlier case involving this same argument, the North
Carolina Supreme Court stated:

" . . . the defense of fraudulent representations, whereby
one is induced to enter into a contract, is not founded on the
contract, but, when established, vitiates and destroys it, and
the restrictive stipulations contained in the contract fall
with it." *Machine Co. v. McKay,* 161 N.C. 584, 586, 77
S.E. 848, 849 (1913).

The plaintiffs allege in their complaint "that prior to and
at the time of the transfer of the title of the above-described
property by the defendants to the plaintiffs, the defendants rep-
resented to the plaintiffs that the property consisted of 125
acres . . . that in fact, the tract of land consisted of approxi-
mately 95 acres." It is a well established rule that one to whom
a positive and definite representation has been made is entitled
to rely on such representation if the representation is of a char-
acter to induce action by a person of ordinary prudence, and is
reasonably relied upon. *Keith v. Wilder,* 241 N.C. 672, 86 S.E.
2d 444 (1955).

" . . . [T]he law is settled in this State by *Griffin v. Lum-
ber Co.,* 140 N.C. 514, where it is held, approving what is
said in Pollock on Torts, 293: 'It seems plausible, at first
sight, to contend that a man who does not use obvious means
of verifying the representations made to him does not

deserve to be compensated for any loss he may incur by relying on them without inquiry. But the ground of this kind of redress is not the merit of the plaintiff, but the demerit of the defendant; and it is now settled law that one who chooses to make positive assertions without warrant shall not excuse himself by saying that the other party need not have relied on them. He must show that his representation was not in fact relied upon. . . . In short, nothing will excuse a culpable misrepresentation, short of proof that it was not relied on, either because the other party knew the truth or because he relied wholly on his own investigation or because the alleged facts did not influence his action at all. And the burden of proof is on the person who has been proven guilty of material misrepresentation.' And in *Hill v. Brewer,* 76 N.C., 124, Justice Bynum said that 'The maxim of *caveat emptor* does not apply in cases where there is actual fraud.' " *Machine Co. v. Bullock,* 161 N.C. 1, 10, 76 S.E. 634, 637 (1912).

Rendition of summary judgment is, by the rule itself, conditioned upon a showing by the movant (1) that there is no genuine issue as to any material fact, and (2) that any party is entitled to a judgment as a matter of law. G.S. 1A-1, Rule 56(c), *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971).

[2] Our inquiry, therefore, is whether the defendants were entitled to summary judgment. Rule 56(e) provides, *inter alia:* "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Even so, defendants, the movants in this case, still have the burden of showing that there is no triable issue of fact and that they are entitled to judgment as a matter of law. *Page v. Sloan,* 281 N.C. 697, 190 S.E. 2d 189 (1972). Therefore, plaintiffs here may succeed in defending against the motion for summary judgment if the evidence produced by the movants and considered by the court is insufficient to satisfy this burden. *Page v. Sloan, supra.* Moreover, " 'Where by the nature

---

Parker v. Bennett

---

of things, the moving papers themselves demonstrate that there is inherent in the problem a factual controversy then, while it is certainly the part of prudence for the advocate to file one, a categorical counter-affidavit [by the plaintiff in this case] is not essential.' " (Citation omitted.) *Page v. Sloan, supra* at 705, 190 S.E. 2d at 194.

On the motion for summary judgment, if the material offered by defendants in support of their motion fails to affirmatively negate any one or more of the essential elements of fraud they have failed to bear the burden of "clearly establishing the lack of any triable issue of fact by the record properly before the court."

We have carefully considered defendants' supporting documents and materials and conclude that the granting of summary judgment by the trial court was erroneous. We hold that defendants have failed to carry the burden of proof needed for the granting of their motion.

Whether defendants perpetrated the fraud which plaintiffs have alleged, and whether plaintiffs reasonably relied upon defendants' representations as to acreage, are questions for the jury.

"The courts have been careful to define the rights of parties to a fraudulent transaction. The purchaser has the right at his election to rescind or to keep the property and recover the difference between its actual value and its value as represented. (Citation omitted.) 'The great weight of authority sustains the general rule that a person acquiring property by virtue of a commercial transaction, who has been defrauded by false representations . . . may recover as damages in a tort action the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representation had been true.' " (Citations omitted.) *Horne v. Cloninger*, 256 N.C. 102, 104, 123 S.E. 2d 112, 113 (1961).

Thus, in our opinion, and we so hold, that in actions such as the case at bar, where motives, intent, subjective feelings and reactions, consciousness and conscience, are to be searched, the issues may not be disposed of on summary judgment.

The judgment is reversed and the case is remanded for further and not inconsistent proceedings.

Reversed and remanded.

Chief Judge BROCK and Judge VAUGHN concur.