EDMUND P. RUSSO, TRUSTEE, TOBIAS SIMON, SUCCESSORS TRUSTEE,
  FOR E. PETER GOLDRING AND CARLOS URRELLA v. MOUNTAIN HIGH,
  INC., H. D. BOYLES, EARL E. BOYLES, JOE P. WARREN, TRUSTEE, AND
  JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY

No. 7724SC985

(Filed 3 October 1978)

**Fraud § 12— misrepresentation of acreage—summary judgment for defendants**

In an action for fraud in misrepresenting the acreage in a tract of land
purchased by plaintiffs, the trial court properly granted summary judgment in
favor of the trustee and the beneficiary of a deed of trust on the property
where all the materials showed that defendants did not make any specific
representation as to the acreage but simply responded to questioning that
their files indicated the tract contained a certain number of acres, and plain-
tiffs failed to rebut defendants' showing that any representations on their part
as to the acreage were neither made with knowledge of their falsity nor in
culpable ignorance of their truth.

Chief Judge BROCK and Judge VAUGHN concur in this opinion for the pur-
pose of clarifying the decision in *Parker v. Bennett*, 32 N.C. App. 46.

APPEAL by plaintiffs from *Gaines, Judge.* Judgment entered
5 July 1977 in Superior Court, MITCHELL County. Heard in the
Court of Appeals 31 August 1978.

Plaintiffs purchased certain real property from defendant
Mountain High in 1969. Defendants Boyles were the officers and
stockholders of Mountain High. There was an outstanding deed of
trust on the property in favor of defendant John Hancock, which
was assumed at the time of plaintiffs' purchase. Defendant War-
ren was a Hancock employee and trustee under the deed of trust.

Plaintiffs purchased the property believing it to contain
4,271.4 acres; however, it was later determined that the tract con-
tained only 1,589.49 acres. Plaintiffs' complaint alleged that all
defendants were guilty of fraud in misrepresenting the acreage.
Defendants filed various answers and motions to dismiss, denying
fraud. John Hancock counterclaimed, accusing plaintiffs of fraud
in obtaining release of part of the land from the deed of trust
without informing John Hancock of the deficiency in total
acreage.

Defendants Warren and John Hancock moved for summary
judgment. Various answers to interrogatories and depositions

were considered. These tended to show that: Mountain High came
to own the property in 1965; one Gus Peterson purported to
survey the property in 1965 and prepared a survey dated May
1965 indicating that the tract contained 4,271.4 acres; Peterson in
fact made no physical survey of the property, but instead wrote
the calls from prior deeds and had a map prepared from these
calls; Mountain High applied for a $200,000 loan from John Han-
cock with the property as security; Warren, the regional loan
agent for John Hancock, received the Peterson survey but ob-
served that it was not signed; H. D. and Earl Boyles obtained
what purports to be an affidavit from Peterson to the effect that
the survey was run by the best known methods and "with ex-
treme care"; title insurance was issued on the basis of the survey
and affidavit; the Boyleses obtained the services of one John
Gilliam to conduct a timber cruise of the land; and Gilliam
suspected an acreage deficiency but nonetheless submitted a
report to John Hancock indicating that there were 4,271 acres in
the tract.

The answers to interrogatories and depositions further tend-
ed to show that: one C. C. Canada, a John Hancock field represen-
tative, inspected the land; it was called to Canada's attention that
old deeds indicated about 1,700 acres in the tract, but this did not
cause him to question the Peterson survey, which he assumed to
be accurate; Canada recommended approval of the loan and John
Hancock thereafter did loan Mountain High $200,000, secured by
a deed of trust; Mountain High sought refinancing in 1967;
Canada wrote Warren before the second loan was closed advising
that any discrepancy as to acreage between the old deeds and the
Peterson survey did not concern him, "as most of our dealings in
the mountains, the surveys come out on a plus side of the old
deed"; the loan was refinanced in the amount of $296,000 by John
Hancock; the Boyleses provided plaintiffs with the Peterson
survey, the John Hancock deed of trust, and the title insurance
policy and told plaintiffs that the property contained 4,271 acres;
plaintiff Goldring and one Robert Fewell, a Florida realtor,
visited the property; Goldring and Fewell telephoned Warren on
2 July 1969 to discuss whether John Hancock would make partial
releases from the deed of trust should plaintiffs purchase the
property; during this phone conversation, Warren indicated that
his file reflected about 4,200 acres in the tract; plaintiffs decided

to go ahead with the purchase; Terry Wood, a North Carolina attorney representing plaintiffs, wrote them a letter on 7 October 1969 advising that the Peterson survey was not a physical survey and that the acreage might be off; plaintiffs decided to go ahead with the purchase because they felt they could rely on Peterson's affidavit, John Hancock's acceptance of it, and the title insurance policy, and because there was no time to conduct a survey before the scheduled closing in late October 1969.

Further questions as to the acreage arose in 1970, and plaintiffs had part of the tract surveyed in 1971 in connection with a proposed sale of a portion of the property and learned from this survey that there was substantially less acreage in the entire tract than previously thought. Plaintiffs nonetheless obtained a release of 764.78 acres from the John Hancock deed of trust without revealing the discrepancy. A survey of the entire tract was completed, and it was learned that the entire tract contained only 1,589.49 acres.

The trial court allowed summary judgment for defendants Warren and John Hancock, and plaintiffs appeal.

*Holshouser & Lamm, by Charles C. Lamm, Jr., for plaintiff appellants.*

*Womble, Carlyle, Sandridge & Rice, by H. Grady Barnhill, Jr. and Jimmy H. Barnhill, for defendant appellees Joe P. Warren, Trustee, and John Hancock Mutual Life Insurance Company.*

ERWIN, Judge.

Plaintiffs' sole assignment of error is that the trial court erred in allowing the motion by defendants Warren and John Hancock for summary judgment. We do not agree and accordingly affirm the judgment of the trial court.

In arguing that the trial court committed error, plaintiffs rely heavily on the 2 July 1969 telephone call from Goldring and Fewell to defendant Warren. They assert that in the course of this conversation, Warren misrepresented the acreage when Warren was either aware of the true acreage or "recklessly ignorant" as to the true acreage.

Plaintiffs rely on *Parker v. Bennett*, 32 N.C. App. 46, 231 S.E. 2d 10 (1977), *cert. denied*, 292 N.C. 266, 233 S.E. 2d 393 (1977), in support of their contention that summary judgment herein was improperly granted. In that case, this Court did hold that summary judgment was improperly granted for defendants therein in an action for fraud involving an alleged misrepresentation of the acreage in a farm. First, we do not believe that *Parker* stands for the proposition that summary judgment is never appropriate in an action for fraud. Rather, the case simply held that defendant-movants in that case had failed to carry their burden under G.S. 1A-1, Rule 56(c), of showing the lack of a genuine issue as to a material fact and that they were entitled to judgment as a matter of law. This Court noted:

> "On the motion for summary judgment, if the material offered by defendants in support of their motion fails to affirmatively negate any one or more of the essential elements of fraud they have failed to bear the burden of 'clearly establishing the lack of any triable issue of fact by the record properly before the court.' " *Parker v. Bennett, supra* at 54, 231 S.E. 2d at 15.

We recognize that the quoted sentence is susceptible to being misunderstood. Clearly, if the defendant moving for summary judgment in a fraud case presents material which effectively negates even one of the essential elements of fraud, summary judgment in defendant's favor should be allowed. It is not necessary that defendant's material negate *all* of the essential elements, and any implication to that effect which may be contained in the language above quoted from *Parker v. Bennett, supra*, is not approved.

While our courts have been hesitant to formulate an all-embracing definition of fraud, the Supreme Court has stated the following elements of actionable fraud in *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E. 2d 494, 500 (1974): "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party."

The materials before the trial court upon the motion for summary judgment tend to show that John Hancock believed the tract consisted of 4,271 acres and relied thereon. Such belief was

supported by the Peterson "survey" and Peterson's affidavit. There is no support for any contention that John Hancock or its agents procured the purported "survey" or participated in any way in its completion. In fact, John Hancock loaned a substantial sum of money secured by a deed of trust on 4,271 acres. There is no inference that either defendant directly participated in securing the affidavit from Peterson, in obtaining the "Surveyor's Report," or in having the map recorded. Again, it appears that John Hancock relied thereon. John Hancock's reliance was such that it made two loans on the property.

The record also reveals that plaintiffs developed an interest in the property through their own agents and the Boyleses, not as a result of any efforts by John Hancock or Warren. Plaintiffs possessed copies of the "survey" as well as copies of other pertinent documents prior to the July 1969 telephone conversation, and Goldring and Fewell had visited the property.

As to the 2 July 1969 phone conversation, Goldring and Fewell called Warren to discuss the matter of partial releases from the deed of trust. The assumption was made by all parties to the conversation that they were talking about a 4,200-acre tract. Further, the depositions of Fewell and Goldring, as well as Warren, indicate that what Warren was saying was based upon his file and that he was not making a specific representation:

Fewell:    "[I]t is true that Mr. Goldring was asking Mr. Warren as to the acreage in the Mitchell County property, and Mr. Warren was saying that on the basis of his file and the survey and the inspection by his fieldman, that John Hancock Mutual Life Insurance Company was satisfied that there was 4,271 acres in the property and that it was a good piece of land."

Goldring: "It would be right to say that Mr. Warren said in words or effect: 'Our file reflects that there are 4,200 acres in that tract.'

. . .

[I] would say that Mr. Warren's statements to me in each instance related to information which was in his file and was based on information which was

in his file. As to whether he ever told me that he knew of his independent knowledge that there were 4,271 acres on the property, he didn't say a word independent of it on his own knowledge. . . ."

Warren:   "[I] told Mr. Goldring that all I could tell him was what was in my file, that I had never seen the property, that the file indicated that it was good security. . . ."

A portion of our Supreme Court's opinion in *Harding v. Insurance Co.*, 218 N.C. 129, 135, 10 S.E. 2d 599, 602 (1940), is relevant here:

"There is no sufficient evidence that the representation, if made, was made with knowledge of its falsity or in culpable ignorance of its truth. Plaintiff knew that Gaither was speaking 'second-hand' and was relying on information received from others. There is no evidence that the contractor was not reliable or that he, to the knowledge of Gaither, made the statements contained in his letter without a *bona fide* and adequate examination of the building. . . ."

Plaintiffs' attorney wrote plaintiff Russo prior to plaintiffs' purchase of the property that the Peterson "survey" "was apparently not a physical survey." Further, the record shows that John Hancock continued to rely on its belief that the tract contained 4,271 acres by releasing from the deed of trust 764.78 acres, almost one-half the actual acreage. This occurred in September 1971 at a release price of $76,478.

In summary, we conclude that defendants John Hancock and Warren successfully carried the burden of negating an element of fraud by showing that any representations on their part as to acreage in the tract were neither made with knowledge of their falsity nor in culpable ignorance of their truth. Plaintiffs have failed to rebut this showing by setting forth specific facts establishing a genuine issue for trial as required by Rule 56(e). Further, we think that all the materials before the trial court show that Warren was not making any specific representation as to the acreage, but simply responded to questioning that his file indicated there were approximately 4,200 acres in the tract. John Hancock relied upon that figure, but events regrettably revealed

to all parties involved that such reliance was misplaced. Plaintiffs apparently felt that what was sufficient for John Hancock was good enough for them. In so thinking, they erred, but such error has not been shown by this record to be due to any actionable fraud on the part of defendants Warren or John Hancock. The trial court properly allowed the motion for summary judgment by defendants Warren and John Hancock.

The judgment of the trial court is

Affirmed.

Judges PARKER and CLARK concur.

Chief Judge BROCK and Judge VAUGHN concur in this opinion for the purpose of clarifying the decision in *Parker v. Bennett*, 32 N.C. App. 46, 231 S.E. 2d 10 (1977).