BERKELEY FEDERAL SAVINGS AND LOAN ASSOCIATION, a FEDERALLY
CHARTERED SAVINGS AND LOAN ASSOCIATION, PLAINTIFF-APPELLEE v. TERRA DEL
SOL, INC., a KENTUCKY CORPORATION; FIRST RESORT PROPERTIES OF
N.C., INC., a NORTH CAROLINA CORPORATION; FOXFIRE RESORTS, INC., a
NORTH CAROLINA CORPORATION; HORIZON RESORTS, INC., a NORTH CAROLINA
CORPORATION; RANCH RESORTS OF N.C., INC., a NORTH CAROLINA CORPORA-
TION; VILLAGE MANAGEMENT, INC., a NORTH CAROLINA CORPORATION;
PREMIER RESORTS, INC., a MASSACHUSETTS CORPORATION; GULF COAST
LAND COMPANY, a FLORIDA CORPORATION; LINDENWOOD LAND COM-
PANY, LTD., a KENTUCKY LIMITED PARTNERSHIP; ILEX PROPERTY
SERVICES, INC., a KENTUCKY CORPORATION; STEVEN K. SMITH, THOMAS
E. NEAL, WILLIAM A. BAILEY, WILLIAM D. BAKER, L. ROBEY CROWE,
E. EARL DONALDSON, LARRY L. HAMER, E. WILLIAM LANGFORD
JR., JAMES LONOWSKI, MARIANNA S. SMITH, AND JERRY E. WINN,
DEFENDANTS-APPELLANTS

No. 9220SC271

(Filed 7 September 1993)

**1. Contracts § 148 (NCI4th)— financing of time share resort
development—breach of contract—evidence sufficient**

The trial court in an action arising from the financing
of a time share resort appropriately granted summary judg-
ment for plaintiff on promissory obligations evidenced by set-
tlement notes executed by First Resort and Ranch Resorts
and a Credit and Guaranty agreement executed by Horizon
and Foxfire Resorts where the pleadings, depositions, documen-
tary evidence, and affidavits before the trial court show that
First Resort and Ranch Resorts agreed to compromise and
settle their outstanding indebtedness to plaintiff under the
original Financing Agreement by executing the promissory
notes. The clear language of these agreements refutes defend-
ants' contention that their liability under the agreements was
conditioned upon an implied promise by plaintiff to foreclose
on the golf courses and clubhouse.

**Am Jur 2d, Compromise and Settlement § 23; Contracts
§§ 337, 397.**

**2. Contracts § 148 (NCI4th)— financing of time share resort
development—breach of contract counterclaims—summary
judgment for plaintiff**

The trial court did not err by granting summary judgment
for plaintiff on defendants' counterclaims for breach of contract
arising from the financing of a time share resort where the

core allegation giving rise to these claims is that plaintiff obligated itself to foreclose on golf course and clubhouse properties 90 days after the execution of the workout agreements, but a review of the written workout agreements reveals no language which contractually bound plaintiff to foreclose on these properties. Although defendants contend that plaintiff "impliedly" promised to foreclose on the properties within 90 days of the execution of the workout agreements, their forecast of evidence fails to raise a genuine issue of fact concerning the "implied" promise.

**Am Jur 2d, Compromise and Settlement § 23; Contracts §§ 337, 397.**

3. **Fraud, Deceit, and Misrepresentation § 17 (NCI4th)— financing of time share resort—fraudulent misrepresentation—intent to deceive**

The trial court properly granted summary judgment for plaintiff on defendants' counterclaim for fraudulent misrepresentation arising from the financing of a time share resort where defendants' counterclaims were based upon an "implied" promise to foreclose but there was no evidence before the trial court indicating that at the time of the execution of the agreements plaintiff did not intend to foreclose on the properties if acquired. To the contrary, the evidence tends to show that plaintiff was prepared to institute foreclosure proceedings in early September, but the foreclosure did not take place at defendants' request and due to defendants' failure to perform their obligations under the program. Defendants did not meet their burden of demonstrating the presence of intent to deceive, one of the essential elements of the claim.

**Am Jur 2d, Fraud and Deceit §§ 188-196.**

4. **Negligence § 78 (NCI4th)— financing of time share development—counterclaims—summary judgment for plaintiff**

The trial court did not err by granting summary judgment for plaintiff on defendants' counterclaims based on negligence, gross negligence, breach of fiduciary duty and vicarious liability arising from the financing of a time share resort where the allegations giving rise to these counterclaims concern plaintiff's alleged mismanagement of the consumer installment contracts purchased from First Resort and its failure to investigate

BERKELEY FEDERAL SAVINGS AND LOAN ASSN. v. TERRA DEL SOL

[111 N.C. App. 692 (1993)]

the financial stability of the project. At the time defendants Smith and Terra purchased a controlling interest in the resort, only First Resort had any type of relationship with plaintiff and First Resort released any claims which it may have had against plaintiff when it entered into the Settlement Agreement with plaintiff in June 1985. Furthermore, any cause of action based upon contract, fraud or any other tort which First Resort might seek to maintain against plaintiff arising out of their relationship was barred by the applicable statute of limitations; the trial court properly dismissed defendants' counterclaims grounded in negligence and gross negligence as a matter of law because there is no cause of action for negligent breach of contract; and the counterclaims for vicarious liability necessarily fail since the underlying causes of action for negligence, breach of contract and fraud fail.

Am Jur 2d, Negligence § 119.

5. **Rules of Civil Procedure § 60 (NCI3d)— time share resort financing—summary judgment—motion for relief—denied**

The trial court did not abuse its discretion in denying defendants' motions for relief from partial summary judgments for plaintiff where defendants alleged the existence of genuine issues of material fact but had a full and fair opportunity to argue the existence of issues of fact at the summary judgment hearing and to argue in this appeal that the summary judgments should not have been granted. Defendants have not shown any other basis for the relief requested by their motions.

Am Jur 2d, Appeal and Error §§ 713, 716.

6. **Discovery and Depositions § 8 (NCI4th)— time limit for completion—no abuse of discretion**

The trial court did not abuse its discretion in setting a time limit for completion of discovery where the original complaint was filed on 26 January 1988; no meaningful discovery was conducted by the parties in this matter until after Judge Seay entered his order; and the action taken by the parties prior to that time consisted of the filing of numerous motions for protective orders, motions for sanctions, and motions to compel.

Am Jur 2d, Depositions and Discovery § 8.

BERKELEY FEDERAL SAVINGS AND LOAN ASSN. v. TERRA DEL SOL

[111 N.C. App. 692 (1993)]

7. **Trial § 3.1 (NCI3d)— motion for continuance of hearing— denied—no abuse of discretion**

The trial court did not abuse its discretion by denying defendants' motion for a continuance of a summary judgment hearing on 12 December 1988 where plaintiff's motions were originally calendared for hearing on 24 October 1988; defendants were granted a continuance and an extended discovery period at that time; and defendants did not file any affidavits detailing the facts necessary to justify their request for a continuance as required by N.C.G.S. § 1A-1, Rule 56(f).

**Am Jur 2d, Appeal and Appeal and Error § 713.**

8. **Evidence and Witnesses § 2593 (NCI4th)— motion to disqualify attorney as potential witness—denied—no abuse of discretion**

The trial court did not abuse its discretion by denying defendants' motion to disqualify plaintiff's attorney from further representation of plaintiff where the judge found that the evidence presented was insufficient to establish that the attorney ought to or would be called as a witness by either party and denied the motion without prejudice to defendants to renew their motion pursuant to Rule 5.2(c) of the Rules of Professional Conduct in the event defendants obtained additional information.

**Am Jur 2d, Witnesses § 227.**

**Attorney as witness for client in civil proceedings—modern state cases. 35 ALR4th 810.**

9. **Pleadings § 364 (NCI4th)— amendment of pleadings—assertion of additional counterclaim — motion to amend denied — no abuse of discretion**

The trial court did not abuse its discretion in an action arising from the financing of a time share resort by denying defendants' motion to amend the pleading to assert an additional counterclaim arising from the original financing agreement where defendants did not show a clear abuse of discretion, especially since a settlement agreement had effectively resolved any claims arising out of the original financing agreement.

**Am Jur 2d, Pleading § 310.**

Appeal by defendants from orders entered 16 December 1988 and 15 October 1991 by Judges Thomas W. Seay, Jr., and D. B. Herring, Jr., respectively, in Moore County Superior Court. Heard in the Court of Appeals 9 February 1993.

In this civil action plaintiff Berkeley Federal Savings and Loan Association, a federally chartered and federally insured savings and loan association, seeks money damages from defendants based upon numerous legal theories including breach of contract, negligence, gross negligence, negligent misrepresentation, misappropriation, fraudulent conveyances, subordination of "insider loans," abuse of process, malicious prosecution, racketeering, Chapter 75 violations and common law unfair and deceptive trade practices. In sum, plaintiff alleged that defendants contrived a scheme to "bilk [plaintiff] out of millions of dollars" through time share financing arrangements. Defendants denied these allegations and alleged seventeen counterclaims for damages from plaintiff based in part upon theories of fraud, breach of contract, breach of fiduciary duty, vicarious liability, negligence, gross negligence, unfair and deceptive trade practices and racketeering.

The real property which is the basis for the dealings between plaintiff and defendants is the Foxfire Resort [hereinafter "Foxfire"], a resort development consisting of single family dwellings, condominiums, time share units, golf courses, a clubhouse, swimming pool, tennis courts and a campground located in Moore County, North Carolina, approximately seven miles from Pinehurst. In November 1983, the Carolina Bank foreclosed on the Foxfire properties and transferred the properties to a wholly-owned subsidiary, defendant Foxfire Resorts, Inc., [hereinafter "Foxfire Resorts"].

On 30 November 1983, Arthur P. Skula, a time share marketer, inspected the properties and made an offer to purchase the resort from the bank for $2,100,000.00. Defendant Steven K. Smith allegedly entered into an agreement with Skula to finance the purchase of the Foxfire properties. As a condition of the agreement, Smith allegedly required Foxfire Resorts to purchase four condominium units at another resort development from one of Smith's subsidiaries, defendant Lindenwood Land Company, for $1,190,000.00 to be paid in monthly installments of $20,600.00. On 13 December 1983, the Carolina Bank sold Foxfire to Skula by delivering to him the outstanding common shares of Foxfire Resorts, Inc. The bank retained

**BERKELEY FEDERAL SAVINGS AND LOAN ASSN. v. TERRA DEL SOL**

[111 N.C. App. 692 (1993)]

a purchase money deed of trust on the golf course property and other amenities.

Following the sale, Skula set out to establish a time share program at Foxfire. He incorporated defendant First Resort Properties of N.C., Inc., [hereinafter "First Resort"] and transferred his shares of Foxfire Resorts to First Resort. First Resort then began acquiring condominiums and converting them into time share units. The time share development ultimately consisted of thirty-eight condominiums owned by First Resort. Foxfire Resort continued to own and operate the golf club, clubhouse and other amenities, while a third corporation, defendant Ranch Resorts, Inc., [hereinafter "Ranch Resorts"] was made owner of the adjacent property consisting of acreage and a hunting lodge which was later developed into a campground.

In February 1984, plaintiff entered into a Financing Agreement with First Resort whereby it agreed to purchase the qualifying consumer installment contracts generated from the sale of the time share units. Plaintiff purchased approximately one thousand consumer installment contracts over the next several months for approximately $8,500,000.00. These contracts were purchased on a "recourse" basis with First Resort bearing the burden of repurchase upon default. As collateral for the contracts, plaintiff was assigned the deeds of trust executed by each consumer obligor.

In October 1984, plaintiff entered into a second Financing Agreement with Ranch Resorts for the development of the campground. Pursuant to this agreement, Ranch Resorts agreed to undertake the obligation of First Resort pursuant to the previous Financing Agreement. Defendants alleged that plaintiff did not investigate the financial statements provided by Skula indicating his financial instability prior to entering into these Financing Agreements. Defendants further alleged that plaintiff had purchased consumer paper generated from the sale of high risk time share installment contracts in several other areas of the country without adequate investigation, preparation or ability to service the contracts in an effort to "book" a quick profit to satisfy bank examiners.

Shortly after entering into the Financing Agreement with plaintiff, First Resort embarked upon a sales campaign to sell time share units to the public. As part of the marketing program, First Resort represented to consumers that the golf course and club amenities would be available to time share owners. As a result

of the sales practices employed, over three hundred complaints were eventually filed by consumers with the North Carolina Real Estate Commission or the North Carolina Department of Justice. Sales began to decline at Foxfire, and by the summer of 1984, Skula, Foxfire Resorts and First Resort were in serious financial trouble; allegedly due, in part, to the fact that Foxfire Resort was paying $20,600.00 per month to Smith's subsidiary as part of the financing agreement with Skula.

Skula began searching for a buyer for Foxfire early in November 1984. On 13 November 1984, Skula entered into a Stock Purchase Agreement with Smith, whereby Skula sold 35% of the outstanding stock of First Resort and Ranch Resorts to Smith and an additional 35% to defendant Terra del Sol, Inc., [hereinafter "Terra"], a Kentucky corporation controlled by Smith. As a result of the transfer of ownership, the North Carolina Real Estate Commission revoked First Resort's registration permitting it to sell time share units to the public.

During this same time period, plaintiff encountered numerous defaults on its consumer installment contracts at Foxfire totalling approximately $4,000,000.00. As a result, plaintiff ceased further funding under the Financing Agreements in November 1984. Plaintiff then learned that Foxfire was controlled by Smith and Terra. Smith and Terra allegedly represented to plaintiff that they were unaware of the project's financial difficulties when they purchased a controlling interest.

Beginning in December 1984, and continuing over the course of the next five months, negotiations took place between Smith and plaintiff's representatives attempting to resolve the parties' mutual problems. The negotiations focused on the large number of consumer defaults on the time share contracts experienced by plaintiff and the financial inability of First Resort to honor its repurchase obligations under the Financing Agreement.

In May 1985, Smith allegedly explained to John Robertson, plaintiff's executive vice-president, that Foxfire Resort was in substantial default on its purchase money deed of trust on the golf course and clubhouse amenities held by Branch Bank and Trust, the successor in interest to the Carolina Bank, and that foreclosure would entitle the ultimate purchaser to cut off any legal right of access by time share owners to these amenities. Smith advised Robertson that foreclosure of the golf course, clubhouse and other

amenities was imminent and that the only way the resort development could be salvaged was for plaintiff to purchase the deed of trust on these properties. Plaintiff orally agreed to use its best efforts to purchase the defaulted deeds of trust encumbering the golf courses and clubhouse. Defendants alleged that Charles Gordon Brown, counsel for plaintiff, represented to defendant Smith that a foreclosure on these properties could and would be initiated approximately 90 days after the effective date of any "workout" agreement entered into by the parties.

A "workout program" was eventually negotiated and executed 3 June 1985, to become effective 30 May 1985. The "workout program" consisted of a series of written agreements including a Sale and Finance Agreement, an End Loan Commitment Agreement, a Credit and Guaranty Agreement and two Settlement Agreements. The objective of the "workout program" was to consolidate ownership of the time shares, amenities and adjacent property in a new corporation, defendant Horizon Resorts, Inc., [hereinafter "Horizon"], which was to be fully responsible for marketing the time share units at Foxfire.

The "Sale and Finance Agreement," which was signed by Robertson on behalf of plaintiff and by defendant Smith on behalf of Terra and Horizon, transferred to Horizon plaintiff's interest in the time share inventory pursuant to the defaulted Financing Agreement with First Resort. Terra also agreed to transfer its interest in the time share units to Horizon for the purpose of resale to the general public. Both transfers were financed by plaintiff and were secured by deeds of trust on the time share units and a promissory note executed by Horizon. As to the golf course property and other amenities, § 5.01 of the Sale and Finance Agreement entitled "Contingent Loan Agreement" provides:

> (a) Existing Debt. Developer [Horizon] acknowledges that the Golf Course Project is presently encumbered by the deeds of trust . . . what shall be hereafter referred to as the "Branch Bank Debt."

> (b) Foreclosure. Developer [Horizon] acknowledges that the current holder of the Branch Bank Debt has threatened to foreclose its deed of trust. The parties hereto agree and acknowledge that the foreclosure of the Golf Course Project and its sale to a third party would have a materially adverse

impact on Developer's [Horizon's] efforts to sell Unit Weeks and on the fair market value of Berkeley's and Terra's security.

(c) Purchase and Loan Agreement. In the event any current or future holder of the Branch Bank Debt shall institute foreclosure proceedings, Berkeley and Terra agree to assist the Developer [Horizon] in acquiring the Golf Course Project out of foreclosure as follows:

(i) Bid. Berkeley shall attempt to bid in the Golf Course Project at any foreclosure sale (or through a subsequent upset bid);

(ii) Purchase and Sale of Golf Course Project. Should Berkeley be the successful bidder at foreclosure sale, Berkeley hereby agrees to sell, and Developer [Horizon] agrees to purchase, the Golf Course Project.

In the "End Loan Commitment Agreement," plaintiff agreed to purchase the consumer installment contracts generated by Horizon's sale of the time share units to the public. Section 3.11 entitled "Conditions of Funding of End Loan Commitment" states in part:

The following are conditions precedent to any obligation on the part of Berkeley to purchase End Loans under the Commitment:

(a) Purchase of Time Share Project and Golf Course Project. Developer [Horizon] shall acquire title to the Time Share Project pursuant to the terms of that certain Conditional Sale and Finance Agreement . . . .

(b) Compliance for Time Share License. On or before December 1, 1985, Developer [Horizon] and the Time Share Project shall be in compliance with all the requirements of the State of North Carolina regarding registration of the Unit Weeks for sale and the licensing of Developer [Horizon] for the selling of such Unit Weeks.

Both the Sale and Finance Agreement and the End Loan Agreement required Horizon to maintain the property and to pay all the necessary operating expenses, including taxes and insurance. In addition, pursuant to the terms of the End Loan Commitment Agreement, plaintiff was entitled to terminate the "workout pro-

gram" upon default by defendants of the provisions of either the Sale and Finance Agreement or the End Loan Commitment Agreement.

Horizon also executed a credit agreement and promissory note whereby plaintiff agreed to extend to it a credit line of $300,000.00 to be used as working capital to pay the ordinary and necessary expenses of the golf course and clubhouse amenities. In addition, the credit agreement provided that Foxfire Resorts would guarantee the payment of all obligations of Horizon to plaintiff. Pursuant to the agreement, plaintiff advanced Horizon $75,000.00 in June 1985, and an additional $159,001.00 in July 1985.

Also, as part of the "workout program," plaintiff agreed to compromise and settle its claims against First Resort and Ranch Resorts for their breach of the Financing Agreement in exchange for First Resort and Ranch Resorts each executing promissory notes in the amounts of $3,109,720.00 and $3,299,850.00 respectively.

Following the execution of these agreements and relying upon defendants' commitment to commence a marketing program by 1 December 1985, plaintiff advanced $2,100,000.00 for the purchase of the defaulted deeds of trust on the golf course and clubhouse from the Branch Bank and Trust on 6 June 1985. The record indicates that the parties anticipated the foreclosure would take place after the 90 day preference period had elapsed which would not be until September 1985.

Immediately following plaintiff's acquisition of the golf course property, defendant Smith notified the Terra shareholders that he was proposing a "different marketing concept" for the Foxfire properties. Smith proposed that instead of selling the unit weeks to the public as time shares, Horizon would sell vacation club memberships which could be used at various resorts including Foxfire. Smith rented office space in Louisville, Kentucky and employed a sales manager to head the marketing effort. John Robertson received a letter dated 2 July 1985 from Smith detailing his plans to sell memberships instead of time shares at Foxfire. Robertson responded on 9 July 1985, stating, ". . . the proposed membership plan may not be considered prudent lending on the part of Berkeley. The commitment to fund for Fox Fire [sic] only was based on a fee simple transaction."

Despite having received this letter, Smith continued to move forward with his proposal. In a letter to stockholders dated 19 July 1985, Smith states that marketing of the memberships was scheduled to begin 1 August 1985. On 13 August 1985, Robertson and David Fox, plaintiff's general counsel, met with Smith in Louisville. Following the meeting, Robertson wrote a letter to Smith asking him to provide detailed plans and financial data for the new marketing venture and explained that discussions with plaintiff's local counsel indicated the program as contemplated might not be permissible under North Carolina law. Later that month, plaintiff was notified by defendants that it could not meet payroll and that a judgment lien had been filed by the North Carolina Security Commission in the amount of $12,589.35 for the unpaid taxes of Foxfire Resorts, Inc.

Representatives of plaintiff met again with Smith on 16 and 17 September 1985. As a result of these meetings, defendants decided to forgo their plans to market the Foxfire properties as vacation memberships and to begin the process of obtaining registration for Horizon with the North Carolina Real Estate Commission to sell time shares. Defendants continued to experience serious cash flow difficulties since no time share sales had taken place and no income was being produced from the properties.

By 1 December 1985, Horizon still had not complied with all statutory requirements regarding the registration of the unit weeks for sale, nor had Horizon become licensed to sell by the Real Estate Commission. On 4 December 1985, defendant Smith removed his personnel from the resort, and plaintiff was forced to pay the resort's numerous debts. On 15 April 1986, plaintiff exercised its right under the deeds of trust and foreclosed on the golf course and clubhouse. Plaintiff bid in the properties at the foreclosure sale and later sold them to a third party.

Plaintiff filed this action on 26 January 1988. With its complaint, plaintiff served a request for production of documents and noticed the depositions of eleven individual shareholders in defendant Terra Del Sol, Inc. Over the course of the next six months, the parties filed numerous motions to compel discovery, motions for sanctions and motions for protective orders. On 30 August 1988, Judge Seay ordered that plaintiff could file an amended complaint on or before 10 September 1988, and that defendants should file an answer on or before 10 October 1988. Plaintiff filed an

BERKELEY FEDERAL SAVINGS AND LOAN ASSN. v. TERRA DEL SOL

[111 N.C. App. 692 (1993)]

amended complaint on 9 September 1988 alleging among other things, that defendants Horizon, Foxfire, First Resort and Ranch Resorts breached the settlement agreements and defendants Smith, Terra, Horizon and Foxfire "materially violated the terms of the workout agreements and failed to satisfy essential preconditions, thus unlawfully preventing the implementation of the workout program." Defendants answered stating, "[t]hat the Complaint of the Plaintiffs [sic] is a complete and total fiction prepared in an effort to lay a 'smoke screen' for the illegal, unlawful, fraudulent and abusive tactics and procedures utilized by the Plaintiffs [sic]." The parties continued to file additional discovery motions which were heard by Judge Seay on 24 October 1988, at which time he determined that "discovery in this case has been unreasonably delayed" and ordered that all discovery be completed by 23 November 1988.

On 2 December 1988, plaintiff filed a motion for partial summary judgment as to Counts II, III and XIII of its complaint based upon the promissory notes executed by defendants First Resort and Ranch Resorts as part of the settlement agreement and the Credit and Guaranty agreement with defendants Horizon and Foxfire for the sums advanced to Horizon. Plaintiff also moved for summary judgment as to defendants' counterclaims. Prior to the hearing on plaintiff's motions, defendants moved for a continuance which was denied. On 22 December 1988, Judge Seay entered orders granting plaintiff a partial summary judgment against defendants First Resort, Ranch Resort, Horizon and Foxfire with respect to its claims for breach of contract and dismissing each of defendants' seventeen counterclaims with prejudice. From these orders, defendants Terra, First Resort, Ranch Resort, Foxfire, Horizon and Smith appealed to this Court. We determined that the orders appealed from were interlocutory and dismissed the appeal. *See Berkeley Fed. Savings & Loan v. Terra Del Sol, Inc.*, 97 N.C. App. 665, 390 S.E.2d 184 (1990).

Following our dismissal of the appeal, defendants filed a motion to amend their answer to allege an additional counterclaim and a motion to disqualify Charles Gordon Brown from continuing to represent plaintiff in the action. Judge Herring conducted hearings and denied these motions.

Thereafter, on 11 September 1991, defendants First Resort, Ranch Resort, Horizon Resort and Foxfire moved pursuant to Rules 54 and 60 of the North Carolina Rules of Civil Procedure requesting

that the court "vacate or modify the order dated December 22, 1988 . . . granting partial summary judgment in favor of plaintiff . . . on Counts II, III and XIII . . . ." On this same date, defendants Smith, Terra, First Resort, Ranch Resorts, Horizon, Foxfire and Village Management Company also moved pursuant to Rules 54 and 60 to vacate or modify the order dated 22 December 1988 dismissing defendants' counterclaims. On 20 September 1991, three days before the hearing of these motions, plaintiff filed a notice of voluntary dismissal without prejudice as to its remaining claims against defendants. On 23 September 1991, Judge Herring heard defendants' motions for relief from Judge Seay's earlier orders, and on 15 October 1991, he entered an order denying the motions. Defendants First Resort, Foxfire Resort, Horizon, Ranch Resort, Terra and Smith appeal.

*Brown & Bunch, by Charles Gordon Brown, for plaintiff-appellee.*

*Patton, Boggs & Blow, by Eric C. Rowe and Allen Holt Gwyn, for defendant-appellees.*

MARTIN, Judge.

Defendants gave notice of appeal on 11 October 1991 from (1) Judge Seay's order dated 22 December 1988 granting plaintiff summary judgment with respect to its claims for breach of contract against defendants First Resort, Ranch Resorts, Horizon and Foxfire Resorts; (2) Judge Seay's order dated 22 December 1988 dismissing defendants' counterclaims; (3) Judge Herring's order dated 15 October 1991 denying defendants' motions for relief from Judge Seay's earlier orders; and (4) four other rulings of the trial court.

I.

[1]   Defendants First Resort, Foxfire Resorts, Ranch Resorts and Horizon assign error to the trial court's entry of summary judgment for plaintiff on its claims for breach of contract based upon the promissory notes executed by defendants First Resort and Ranch Resorts and the Credit and Guaranty Agreement executed by defendants Horizon and Foxfire Resorts. For the reasons stated below, we hold the trial court properly entered judgment for plaintiff with respect to these claims.

We note, at the outset, that defendants previously attempted to appeal to this Court from Judge Seay's order granting plaintiff partial summary judgment on these claims. In an unpublished opin-

ion, we held that the order appealed from was interlocutory, adjudicating fewer than all of plaintiff's claims. *Berkeley Fed. Savings & Loan v. Terra Del Sol, Inc.*, 97 N.C. App. 665, 390 S.E.2d 184 (1990). At that time, we dismissed the appeal finding that "[t]he claims on which the trial court granted summary judgment are based on contracts which are a small part of plaintiff's case in chief . . ." and ". . . are not in danger of being lost or prejudiced if not appealed before a final determination of all claims." *Id*. While we reaffirm our belief that Judge Seay's order, as entered, was interlocutory pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure in that it adjudicated fewer than all the claims of the parties, it has now become "final" and therefore subject to appellate review by virtue of plaintiff voluntarily dismissing the remainder of its claims on 20 September 1991. *See Lloyd v. Carnation Co.*, 61 N.C. App. 381, 386, 301 S.E.2d 414, 417 (1983).

Where a motion for summary judgment is granted, the critical questions for determination upon appeal are whether, on the basis of the materials presented to the trial court, there is a genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990); *Oliver v. Roberts*, 49 N.C. App. 311, 271 S.E.2d 399 (1980). From our review of the record, we have determined that Judge Seay appropriately granted summary judgment in plaintiff's favor on the promissory obligations evidenced by the settlement notes executed by First Resort and Ranch Resorts and the Credit and Guaranty agreement executed by Horizon and Foxfire Resorts. The pleadings, depositions, documentary evidence, and affidavits before the trial court show that First Resort and Ranch Resorts agreed to compromise and settle their outstanding indebtedness to plaintiff under the original Financing Agreement by executing the promissory notes. Likewise, the evidence before the trial court clearly establishes Horizon and Foxfire Resorts' liability to plaintiff for the sums advanced to Horizon pursuant to the Credit and Guaranty Agreement. These agreements are *prima facie* evidence of defendants' obligations to plaintiff. *See Bank v. Woronoff*, 50 N.C. App. 160, 272 S.E.2d 618 (1980), *disc. review denied*, 302 N.C. 629, 280 S.E.2d 449 (1981). The clear language of these agreements refutes defendants' contention that their liability under the agreements was conditioned upon an implied promise by plaintiff to foreclose on the golf courses and clubhouse. Where the agreements between the parties are clear and unambiguous, no genuine issue of fact

arises as to the intention of the parties, and summary judgment is appropriate. *Corbin v. Langdon*, 23 N.C. App. 21, 208 S.E.2d 251 (1974). The order of the trial court granting plaintiff summary judgment with respect to these claims is affirmed.

## II.

[2] Defendants Terra, First Resort, Foxfire Resorts, Ranch Resorts, Horizon and Smith assign error to Judge Seay's order granting plaintiff summary judgment on each of the seventeen counterclaims contained in defendants' amended answer. In the trial court, plaintiff moved for summary judgment on each of the counterclaims stating, "[w]ith respect to the specific grounds for such motion, Berkeley shows the Court that essential elements of defendants' counterclaims are not supported by any evidence." Judge Seay concluded that plaintiff was entitled to judgment on each of the counterclaims as a matter of law. We affirm.

A defending party is entitled to summary judgment if he can show that the claimant cannot prove the existence of an essential element of his claim or cannot surmount an affirmative defense which would bar the claim. *Walker v. Durham Life Ins. Co.*, 90 N.C. App. 191, 368 S.E.2d 43 (1988). The majority of defendants' counterclaims, numbers 5, 6, 7, 8, 11, 16, 17, and 18, are based, for the most part, on theories of breach of contract and fraudulent misrepresentation. The core allegation giving rise to these claims is that plaintiff obligated itself to foreclose on the golf course and clubhouse properties 90 days after the execution of the workout agreements. Defendants alleged that "[a]ll parties present at the negotiations agreed that the foreclosure was a condition precedent to the performance of the other conditions and obligations contained in the workout agreements and this representation by Brown and Berkeley was material to the execution of the documents by Defendants."

Our review of the written workout agreements reveals, however, no language which contractually bound plaintiff to foreclose on these properties within 90 days or at all for that matter. Defendants acknowledge that at the time the parties entered into these agreements such a provision was specifically excluded from the language of the written contracts. However, defendants contend that plaintiff "impliedly" promised to foreclose on the properties within 90 days of the execution of the workout agreements. Defend-

ants' forecast of evidence, however, fails to raise a genuine issue of fact concerning the "implied" promise.

First, at the time the agreements were executed, 3 June 1985, plaintiff did not own any interest in the golf course properties since it had not purchased the deed of trust from the Branch Bank & Trust. In fact, the affidavits and the language in § 5.01 of the "Sale and Finance Agreement" indicate that plaintiff did not at that time anticipate being able to obtain the deed of trust by way of negotiation with Branch Bank & Trust. Thus, at that time, plaintiff could not be bound to "foreclose" on property in which it had no interest.

Secondly, the affidavits and depositions indicate that if any enforceable promise existed at that time, it was agreed upon by both parties that foreclosure would not take place until the 90 day preference period had elapsed. Thus, the earliest date upon which foreclosure could have occurred was in early September 1985, 90 days following plaintiff's purchase of the deeds of trust on the property in June 1985. Representatives of the parties then met to discuss the future of the workout program. From these meetings, it was determined that defendants had embarked on a marketing strategy contrary to the plan adopted in the workout agreements. It was further determined that defendants had failed in several other respects to conform to the conditions of the agreements, including the payment of taxes and insurance and registration with the North Carolina Real Estate Commission. At that point, it was clear to plaintiff that defendants had not performed their obligations under the program, and pursuant to the agreements, plaintiff was entitled to terminate the program. One who fails to perform the conditions imposed upon him by the terms of a contract, and shows no excuse for such failure to perform, cannot bring an action based on the other party's refusal of failure to perform. *Peasely v. Coke Co.*, 282 N.C. 585, 194 S.E.2d 133 (1973). Defendants' counterclaims for breach of contract must fail.

[3] Defendants' counterclaims for fraudulent misrepresentation based upon the "implied" promise to foreclose must also fail since defendants did not meet their burden of demonstrating the presence of one of the essential elements of this claim, the intent to deceive. There was no evidence before the trial court indicating that at the time of the execution of the agreements plaintiff did not intend to foreclose on the properties if acquired. To the contrary, the

evidence tends to show that plaintiff was prepared to institute foreclosure proceedings in early September, but at defendants' request and due to defendants' failure to perform their obligations under the program, the foreclosure did not take place. This Court has long held that summary judgment is appropriate in cases of fraud where an essential element of the claim is missing. *See Ramsey v. Keever's Used Cars*, 92 N.C. App. 187, 374 S.E.2d 135 (1988); *Uzzell v. Integon Life Ins. Corp.*, 78 N.C. App. 458, 337 S.E.2d 639 (1985), *cert. denied*, 317 N.C. 341, 346 S.E.2d 149 (1986); *Russo v. Mountain High, Inc.*, 38 N.C. App. 159, 247 S.E.2d 654 (1978).

[4] Defendants' remaining counterclaims are based upon a variety of theories including negligence, gross negligence, breach of fiduciary duty and vicarious liability. Our review of the record reveals no basis in fact or in law for these counterclaims, and we affirm the order of summary judgment dismissing them.

The allegations giving rise to these counterclaims concern plaintiff's alleged mismanagement of the consumer installment contracts purchased from First Resort and its failure to investigate the financial stability of the project, all of which allegedly occurred prior to November 1984 when defendants Smith and Terra purchased a controlling interest in the resort. At that time, only First Resort had any type of relationship with plaintiff and that relationship was created by the contractual obligations stated in the Financing Agreement. First Resort, however, released any claims which it may have had against plaintiff when it entered into the Settlement Agreement with plaintiff in June 1985. Furthermore, any cause of action based upon contract, fraud or any other tort which First Resort might seek to maintain against plaintiff arising out of their relationship was barred by the applicable statute of limitations as of the date of the filing of this action. *See* N.C. Gen. Stat. §§ 1-52(1), 1-52(5) & 1-52(9) (1983). Additionally, the trial court properly dismissed defendants' counterclaims grounded in negligence and gross negligence as a matter of law in view of the rule that there is no cause of action for negligent breach of contract. *Mason v. Yontz*, 102 N.C. App. 817, 818, 403 S.E.2d 536, 538 (1991).

Defendants' counterclaims for vicarious liability necessarily fail since the underlying causes of action for negligence, breach of contract and fraud fail. Thus, the trial court was correct in its determination that there was no genuine issue of material fact as to

any of defendants' counterclaims and in its dismissal of the claims as a matter of law.

## III.

[5] The defendants also assign error to Judge Herring's denial of their motions for relief from the summary judgment orders entered by Judge Seay. Motions for relief are addressed to the sound discretion of the trial court, and appellate review is limited to determining whether the court abused its discretion. *Sink v. Easter*, 288 N.C. 183, 217 S.E.2d 532 (1975).

The record indicates that defendants filed motions pursuant to G.S. § 1A-1, Rules 54 and 60, to modify or vacate orders on 11 September 1991, almost three years after the summary judgment orders were entered. In their motions, defendants alleged the existence of genuine issues of material fact which justified relief from Judge Seay's entry of partial summary judgment for plaintiff. Defendants had a full and fair opportunity to argue the existence of issues of fact to Judge Seay at the summary judgment hearing, and have also had a full and fair opportunity to argue in this appeal that the summary judgments should not have been granted. We have determined that the summary judgments were correct as a matter of law. Defendants have not shown any other basis for the relief requested by their motions; therefore we find no abuse of the trial court's discretion in denying defendants' motions for relief.

## IV.

Finally, defendants assign error to the following rulings of the trial court: (1) Judge Seay's order dated 8 November 1988 requiring the parties to complete discovery by 23 November 1988; (2) Judge Seay's order dated 12 December 1988 denying defendants' motion for a continuance of the hearing on plaintiff's motion for partial summary judgment and judgment on defendants' counterclaims; (3) Judge Herring's order dated 5 August 1991 denying defendants' motion to disqualify plaintiff's counsel of record, Charles Gordon Brown; and (4) Judge Herring's order dated 12 June 1991 denying defendants' motion to amend their answer to allege an additional counterclaim. Defendants also assigned error in the record to Judge Seay's refusal to consider two affidavits submitted at the summary judgment hearing. Defendants, however,

have not argued this assignment of error in their brief, and it is deemed abandoned. N.C.R. App. P. 28(b)(5) (1993).

[6] As to Judge Seay's orders setting a time limit for the completion of discovery and denying defendants' motion to continue the summary judgment hearing, defendants correctly acknowledge that these matters are addressed to the sound discretion of the trial judge and will not be disturbed on appeal absent a showing of abuse. See Hudson v. Hudson, 34 N.C. App. 144, 237 S.E.2d 479, disc. review denied, 293 N.C. 589, 239 S.E.2d 264 (1977) (discovery orders); Shankle v. Shankle, 289 N.C. 473, 223 S.E.2d 380 (1976) (motions to continue). Defendants contend, however, that Judge Seay abused his discretion in entering these orders. We disagree.

First, as to Judge Seay's discovery order, we note that defendants' characterization of the order as one "setting a 30 day limit on discovery" is not altogether accurate. Instead, the order entered 24 October 1988, extended the discovery period by thirty days allowing the parties until 23 November 1988 to complete discovery. From the record, it appears that the hearing held on 24 October 1988 was calendared for the purpose of hearing plaintiff's motions for partial summary judgment on three of its claims and as to nine of defendants' counterclaims. Defendants' motion for a continuance of the summary judgment hearing was granted. The court then extended the discovery period for thirty days and established a time schedule to guide the parties in meeting the deadline. In so doing, the court found that "discovery in this case has been unreasonably delayed" and admonished all parties "to proceed to conclude all discovery with expedition." We agree with the trial court's finding. Our review of the record indicates that the original complaint was filed on 26 January 1988; however, no meaningful discovery was conducted by the parties in this matter until after Judge Seay entered his order on 24 October 1988. Prior to this time, the action taken by the parties consisted of the filing of numerous motions for protective orders, motions for sanctions, and motions to compel. Under these circumstances, we find no abuse of discretion in Judge Seay's discovery ruling.

[7] We also find no abuse of discretion in Judge Seay's denial of defendants' motion for a continuance of the hearing on 12 December 1988. As indicated above, plaintiff's motions, in part, were originally calendared for hearing on 24 October 1988. At that time, Judge Seay granted defendants a continuance and extended the discovery

period, allowing defendants additional time to prepare for the hearing. Moreover, defendants did not file any affidavits detailing the facts necessary to justify their request for a continuance as required by G.S. § 1A-1, Rule 56(f). *See also Glynn v. Stoneville Furniture Co.*, 85 N.C. App. 166, 354 S.E.2d 552, *disc. review denied*, 320 N.C. 512, 358 S.E.2d 518 (1987). Defendants have therefore failed to demonstrate any abuse of discretion under these circumstances.

Defendants' remaining assignments of error with respect to Judge Herring's denial of their motions to disqualify plaintiff's counsel and to amend their answer are also matters within the discretion of the trial court. *See Lowder v. All Star Mills, Inc.*, 60 N.C. App. 275, 300 S.E.2d 230, *aff'd in part, rev'd in part on other grounds*, 309 N.C. 695, 309 S.E.2d 193 (1983) (motions to disqualify); *Smith v. McRary*, 306 N.C. 664, 295 S.E.2d 444 (1982) (motions to amend). Again, defendants have not demonstrated any abuse of discretion on the part of the trial judge in regard to these rulings.

[8] With respect to defendants' motion to disqualify Charles Gordon Brown from further representation of plaintiff in this matter, Judge Herring found that the evidence presented at the hearing was insufficient to establish that Mr. Brown ought to or would be called as a witness by either party in the matter. Based upon this finding, Judge Herring denied the motion, but without prejudice to defendants to renew their motion pursuant to Rule 5.2(c) of the Rules of Professional Conduct in the event defendants obtained additional information justifying such renewal. It is clear that defendants failed to meet their burden before the trial court, but the trial court, instead of denying the motion outright, allowed defendants an opportunity to refile the motion if necessary. We discern no abuse of discretion in the ruling.

[9] Finally, on 7 September 1990, almost two years after Judge Seay dismissed defendants' counterclaims, defendants sought to amend their responsive pleading to allege an additional counterclaim against plaintiff, arising out of the original financing agreement. Defendants contended that the requested amendment was based on evidence unavailable to them at the prior summary judgment hearing before Judge Seay; plaintiff contended that the evidence was not "new." Judge Herring held a hearing on the motion, and determined that justice did not require that the amendment be

allowed. Accordingly, he ruled, in his discretion, that the motion to amend should be denied. While we recognize that motions to amend pleadings should be liberally granted, *vanDooren v. vanDooren*, 37 N.C. App. 333, 246 S.E.2d 20, *disc. review denied*, 295 N.C. 653, 248 S.E.2d 258 (1978), such motions are addressed to the sound discretion of the trial judge, and a clear abuse of such discretion must be shown before the judge's ruling will be disturbed. *Smith v. McRary*, 306 N.C. 664, 295 S.E.2d 444 (1982). In this case, defendants have shown no such abuse of discretion and we find none, particularly since the Settlement Agreement between plaintiff and First Resort effectively resolved any claims arising out of the original financing agreement. Defendants' assignment of error is overruled.

Affirmed.

Judges WELLS and ORR concur.