PORTER v. AMERICAN CREDIT COUNSELORS CORP.

[154 N.C. App. 292 (2002)]

KEVIN P. PORTER AND MACNIFISENSE, INC., PLAINTIFFS v. AMERICAN CREDIT COUNSELORS CORPORATION; JOHN A. WASKIN; CHERYL WASKIN; AND CREDIT MANAGEMENT SYSTEMS, INC., DEFENDANTS/CROSSCLAIM-PLAINTIFFS v. ALLIANCE CREDIT COUNSELING, INC., CROSSCLAIM-DEFENDANT

No. COA01-1358

(Filed 3 December 2002)

**1. Appeal and Error— appealability—partial summary judgment**

A partial summary judgment in a case that arose from the dissolution of a business was appealable where the order was final as to a breach of contract claim and the trial court certified the case for immediate appeal.

**2. Witnesses— dissolution of business—agreement for referee—expert appointed instead**

There was no error in a breach of contract action that arose from the dissolution of a business where the parties had entered into a settlement agreement which provided for the appointment of a referee or special master and the court appointed an expert under Rule 706. The parties consented to the court's order appointing its own expert and are bound by that agreement. The expert could be called to testify or have his deposition taken by any party.

**3. Contracts— dissolution of business—transfer of assets—compliance with agreement—factual issues**

There were material issues of fact in an action that arose from the dissolution of a business where the expert appointed by the court concluded that the information transfer provisions of the dissolution had been complied with, but there were conflicting affidavits. Since the parties and the trial court are not bound by the expert's conclusions, there were viable issues of fact.

Judge TYSON dissenting.

Appeal by defendants from judgment entered 15 February 2001 by Judge James E. Lanning in Mecklenburg County Superior Court. Heard in the Court of Appeals 22 August 2002.

**PORTER v. AMERICAN CREDIT COUNSELORS CORP.**

[154 N.C. App. 292 (2002)]

*Carley & Rabon, PLLC, by Stephen R. Carley and Charles H. Rabon, Jr., for plaintiffs-appellees.*

*Wishart, Norris, Henninger & Pittman, P.A., by Robert J. Wishart, David C. Boggs, June K. Allison, and Pamela S. Duffy, for defendants-appellants.*

THOMAS, Judge.

Plaintiff Kevin P. Porter and defendants entered into a settlement agreement as part of the dissolution of their business relationship. The agreement included a stipulation whereby they bound themselves to the determination of a "referee or special master" if a dispute developed regarding the fulfillment of its terms.

A dispute eventually arose. Defendants, claiming Porter did not fully transfer certain data, refused to make a payment to Porter which would otherwise be due. Porter and his company, plaintiff Macnifisense, Inc., filed suit, and moved for the appointment of a referee. The trial court then entered an order for "Appointment of Expert," with the parties subsequently agreeing for David Asbury to be the expert. After his evaluation and analysis, Asbury submitted a report to the court stating the data had been fully and properly transferred to defendants.

Based on "the pleadings, matters of record in the file and applicable law," plaintiffs moved for summary judgment.

On 15 February 2001, the trial court granted partial summary judgment in favor of plaintiffs on the issue of whether they had breached the agreement. Defendants American Credit Counselors Corporation (ACCC), John A. Waskin (Waskin), Cheryl Waskin, and Credit Management Systems, Inc. (CMS), appeal. Crossclaim-defendant Alliance Credit Counseling, Inc., allegedly a company developed by Porter that competes with ACCC and CMS, is not a party to this appeal.

The primary basis of defendants' appeal is that there are genuine issues of material fact. Further, they contend, the trial court erred by accepting the report of Asbury, which was not verified, without defendants having the opportunity to depose or cross-examine him. Plaintiffs counter that the settlement agreement provided for Asbury's report to be conclusive.

Based on the reasons herein, we reverse and remand.

Porter and Waskin were co-owners and business partners of CMS. ACCC is a nonprofit corporation that provides credit counseling, debt management plans, and related services. The services of ACCC are highly automated and dependent on electronic document and data management. Through a written service agreement, CMS supplied ACCC with necessary data management. Porter was the computer, software, and database expert of CMS. His copyrighted software, known as "Star Wars," powered the computer-related part of ACCC's business. Waskin's expertise was in the area of credit counseling and management.

The business relationship between Porter and Waskin deteriorated, however, with the parties entering into a settlement agreement dated 6 April 2000. The agreement provided that ACCC would pay Porter $300,000 for his stock in CMS with Porter retaining ownership in Star Wars. Defendants were prohibited from using Star Wars after the period during which data would be transferred.

The $300,000 payment was to be made in two equal installments contingent on the transfer of data to defendants. The contingencies are set forth in paragraphs 1(a) and (b) of the settlement agreement. The first condition required Porter to deliver the data in a certain format:

> (a) [Porter shall deliver] to ACCC . . . an alpha numeric text file of all client-related data, field delineated, using the same field and record delineation as was used by Amerix when Amerix transferred similar data to CMS. Additionally, the data provided will not be encrypted nor randomized. The data will be provided without skipping fields or tables. Upon a determination by Mr. Waskin that condition 1(a) has been fulfilled Waskin will authorize the release of $150,000.00 to Porter[.]

Porter transferred the files on 7 April 2000 and was paid the first installment of $150,000. The second installment would be paid when:

> (b) ACCC has verified that the data has been provided in the form promised by Porter and that the file is complete using spot checks of records and total record count. Upon determination that condition (b) above has been fulfilled, [defendants' lawyers] will be instructed to pay the balance of the settlement proceeds to Porter.

Defendants refused to pay Porter the remaining $150,000. In his affidavit, Waskin contends that the first $150,000 was paid to insure

Porter's continued cooperation, but that the requirements of the settlement agreement had not been met.

The settlement agreement further provided that, in the event of a dispute, a court-appointed "referee or special master" would determine whether the conditions had been met:

> 2. Porter will arrive at the ACCC office on Friday, April 7th, 2000 between 8:00 and 9:00am EDT and will work with the technical people designated by ACCC until the data is satisfactorily loaded into ACCC's computer system. Waskin will make a determination about the fulfillment of condition (b) by Wednesday April 12th, 2000 at noon. *In the event Waskin determines that the conditions have not been met and Porter disagrees any party may apply to a Superior Court Judge in Mecklenburg County North Carolina for the appointment of a referee or special master whose decision will be final.* In the event a referee or special master is appointed the losing party will pay the winners reasonable attorney's fees in an amount to be determined by a Judge.

(Emphasis added).

After he did not receive the second payment of $150,000, Porter filed a complaint containing motions for the appointment of a referee to determine whether the data files had been properly transferred and for a preliminary injunction. In opposition to the motions, defendants filed the affidavit of Robert Ducker, an expert in software operations and conversion hired by Waskin to complete the data conversion from Porter's operating system to a Windows-based operating system. Ducker claimed the "data provided by Mr. Porter was not in the format he promised." Additionally, Waskin filed his own affidavit disputing Porter's assertion that he had performed his obligations under the settlement agreement.

On 21 June 2000, the trial court issued an "Order for Appointment of Expert and for Preliminary Injunction." The order reads in pertinent part:

> After considering the briefs and affidavits submitted by both parties, the pleadings and other matters of record, the arguments and representations of counsel and with the agreement of the parties the Court rules as follows:

IT IS ORDERED that:

1. The Court shall appoint its own expert pursuant to North Carolina Rule of Evidence 709 [sic] rather than a Rule 53 referee, to determine and advise the Court whether the Data Files at issue in this case were properly transferred by plaintiffs to ACCC, as required by the Settlement Agreement executed by the parties on April 6, 2000.

We initially note that it is clear from the context of the order that the trial court intended to reference Rule 706, and not Rule 709, which does not exist.

The order further provided that the parties were to agree on the appointed expert or submit separate recommendations. It also allowed the parties to retract their consent: "Any party, for any reason, may withdraw his consent and seek a ruling by placing the matter on for hearing before the undersigned and providing proper notice of the same."

The parties consented to Asbury as the court-appointed expert. The trial court entered an additional order appointing Asbury, requiring him to make a determination and advise the court in a written report whether Porter had complied with the settlement agreement.

In his written report to the court filed 20 July 2000 Asbury stated:

As a result of my work, I conclude that Mr. Porter transferred to ACCC an alpha numeric text file of all client-related data field delineated, without skipping fields or tables, that the transfer was complete and the data was not encrypted or randomized.

Defendants, however, then filed an amended answer, counterclaim, and third-party complaint. On 20 November 2000, plaintiffs filed a motion for summary judgment. In opposition to the motion, defendants/crossclaim plaintiffs, filed the affidavit of Ronald McFarland, Ph.D. Porter filed a second affidavit in which he asserted that since the Star Wars System was provided to CMS in a configuration that permitted data to be deleted or modified, "it is highly unlikely that any third-party review of the data conducted subsequently to that of David Asbury can be considered reliable." He further stated that due to the system's unique and complex structure, Asbury's review was by necessity conducted with the assistance of Porter, Waskin, and designated representatives. Without their assistance, a third-party could

not competently review the system. On 29 December 2000, seven days before the hearing on summary judgment, defendants filed a Notice of Deposition of Asbury. The trial court did not continue the matter for defendants to depose Asbury and granted partial summary judgment to plaintiffs. Defendants appeal.

**[1]** At the outset, we note that because a grant of partial summary judgment does not entirely dispose of the case, it is an interlocutory order which is ordinarily not appealable. *Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993). The order here granted partial summary judgment in favor of plaintiffs.

There is, however, an exception applicable here that permits appellate review of an interlocutory order. If the order or judgment is final as to some but not all of the claims or parties, and the trial court certifies the case for immediate appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) (2001), an immediate appeal may lie. *Van Engen v. Que Scientific Inc.*, 151 N.C. App. 683, 686, 567 S.E.2d 179, 182 (2002). The order here was final as to the breach of contract claim and included the trial court's certification pursuant to Rule 54(b). Therefore, it is appealable and properly before us.

**[2]** By their first and second assignments of error, defendants contend the trial court erred in granting summary judgment because: (1) defendants had not been afforded an opportunity to depose or examine Asbury; and (2) genuine issues of material fact were presented. They argue that the trial court did not appoint a "referee or special referee" as contemplated by the parties in the settlement agreement but rather an expert under Rule 706 of the North Carolina Rules of Evidence. We agree.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). The party moving for summary judgment has the burden of establishing that an essential element of the claim does not exist, or that the non-moving party cannot produce evidence to support an essential element of the claim. *Evans v. Appert*, 91 N.C. App. 362, 365, 372 S.E.2d 94, 96, *disc. review denied*, 323 N.C. 623, 374 S.E.2d 584 (1988). "The record is reviewed in the light most favorable to the non-movant, and all inferences will be drawn against the movant." *Allstate Ins. Co. v. Oxendine*, 149 N.C. App. 466, 468, 560 S.E.2d 858, 860 (2002).

Asbury was appointed as a court expert pursuant to Rule 706, which provides in pertinent part:

A witness so appointed shall advise the parties of his findings, if any; his deposition may be taken by any party; and he may be called to testify by the court or any party. He shall be subject to cross-examination by each party, including a party calling him as a witness.

N.C.R. Evid. 706(a).

Absent indication from the parties to the contrary, we give the words of their agreement their ordinary and common meaning. *Briggs v. Mills, Inc.*, 251 N.C. 642, 644, 111 S.E.2d 841, 843 (1960). The original agreement here provided for a court-appointed "referee" or "special master." Subsequently, however, the parties consented to the court's order appointing "its own expert." The parties are bound by this substitute agreement. Had the court order contemplated appointing a referee or special master it would have said so; it would not have used the words "its own expert" and "pursuant to North Carolina Rule of Evidence 709 [sic]."

Both parties are bound by their agreement to have a Rule 706 expert appointed and, in doing so, both risked the possibility of further litigation initiated by the party opposing Asbury's decision. Since Asbury was not a referee or special master as contemplated by the original settlement agreement, his report was not conclusive. As with any other witness, he could be "called to testify by the court or any party," or have "his deposition . . . taken by any party." N.C.R. Evid. 706(a).

[3] Moreover, the affidavits submitted by defendants set forth factual issues of whether Porter complied with the settlement agreement. Ducker's affidavit reads:

The data supplied by Mr. Porter was not complete when supplied and did not contain the requirement of all client related data.

. . .

The data was not fully field delineated. In fact, a substantial delay in my conversion included located a non-field delineated receipts file.

. . .

**PORTER v. AMERICAN CREDIT COUNSELORS CORP.**

[154 N.C. App. 292 (2002)]

The data provided by Mr. Porter was not in the format promised. It was encrypted and randomized such that data conversion was difficult and even, at times, impossible.

McFarland's affidavit states:

As a result of my examination of the data files, I have discovered that not all files were fully field delineated. This lack of adherence to conversion specifications would cause errors in converting data from the CMS system to the CreditMaster system if this data error were not accommodated for in the data conversion programs.

Asbury, meanwhile, sent a report to the trial court but was not deposed and did not testify. Porter submitted two of his own affidavits and a verified complaint. Since the parties and the trial court are not bound by Asbury's conclusions, there are viable issues of fact. Accordingly, we find merit to defendants' assignment of error and reverse the trial court's order.

In their second assignment of error, defendants contend the trial court erred by not granting their motion to continue the summary judgment hearing. Because of our holding as to the first assignment of error, we do not address defendants' argument.

REVERSED AND REMANDED.

Judge MARTIN concurs.

Judge TYSON dissents.

TYSON, Judge dissenting.

I respectfully dissent from the majority's opinion which reverses the trial court's grant of partial summary judgment in favor of plaintiffs.

## I. Finality of the Decision

Plaintiffs and defendants resolved their dispute through a settlement and release agreement ("settlement agreement") that specified:

In the event Waskin determines that the conditions have not been met and Porter disagrees any party may apply to a Superior Court Judge in Mecklenburg County North Carolina for the appointment of a referee or special master whose decision will be final.

Porter petitioned the court to appoint a referee pursuant to the settlement agreement to determine whether the Data Files had been properly transferred. As provided in the settlement agreement, the referee's decision would be final and binding on the parties. On 21 June 2000, the parties consented to an order which stated: "The Court shall appoint its own expert pursuant to North Carolina Rule of Evidence 709 [sic] rather than a Rule 53 referee, *to determine* and advise the Court whether the Data Files at issue in this case were properly transferred by plaintiffs to ACCC, as required by the Settlement Agreement executed by the parties on April 6, 2000." (emphasis added). The majority's opinion concludes that by consenting to this order, the parties waived the contractual right to have the appointed official's determination be final. I do not read the settlement agreement and the order in this manner.

The order clearly states that an expert will be appointed by the trial court, presumably pursuant to Rule 706 of the North Carolina Rules of Evidence and sets forth the issues and duties of the expert:

[The expert's] duties shall include providing a written notification to the Court indicating (1) whether or not plaintiff Kevin P. Porter ("Mr. Porter") complied with the provisions of a settlement agreement between the parties . . ., by transferring an alpha numeric text file of all client-related data, without skipping fields or tables, to American Credit Counselors Corporation ("ACCC"); (2) whether the transfer was complete by spot checking specific records and comparing total record count of the data transferred with the original file; and (3) whether the data was encrypted or randomized.

The language of the settlement agreement is unambiguous that the determination of the "referee or special master" be final. The parties consented to amending the settlement agreement by substituting an "expert" with specific questions the expert was required to "determine" for a "referee" with no specific duties. The settlement agreement's provision for finality of the expert's decision was not altered by the consent orders.

Defendants do not contend that the expert exceeded his duties or failed to perform his duties required by the trial court's appointing order. Defendants question the determinations the expert reached. As the parties had previously agreed that the decision would be final, the trial court did not err in granting partial summary judgment to plaintiffs. I would overrule this assignment of error.

## II. Continuance of Summary Judgment Hearing

As I would affirm the trial court's implicit ruling that the determination of the expert was final, I address defendants' other assignment of error: the trial court's failure to continue the hearing on the motion for summary judgment.

Presuming the substitution of the expert for the referee was not final, defendants waived the right to contest the determinations of the expert by failing to timely object to or contest his decision. The consent orders providing for and appointing an expert stated: "Any party, for any reason, may withdraw his consent and seek a ruling by placing the matter on for hearing before the undersigned and providing proper notice of the same[,]" and "[a]ny party that wishes to expand, narrow or clarify the authority of the court-appointed expert shall apply to the undersigned for such relief by filing a written motion and providing notice as required by the North Carolina Rules of Civil Procedure." Defendants did neither of these. The expert answered definitively each question contained in the trial court's appointing consent order and filed his report on 13 July 2000. Defendants never objected to the report and delayed for nearly six months from the filing of the report before giving notice of his deposition.

On 20 November 2000, plaintiffs moved for summary judgment and filed a notice of hearing for 5 January 2001, more than six weeks prior notice. On Friday, 29 December 2000, defendants gave notice to depose the expert on 25 January 2001. The hearing on the motion for partial summary judgment was held on 5 January 2001 as previously scheduled. Defendants delayed for over five weeks from plaintiffs' notice of hearing on summary judgment and delayed until less than one week prior to the hearing itself to give notice of the deposition. Defendant filed no motion to continue the summary judgment hearing until after the deposition. Defendants waived the right to depose or to contest the determination of the expert.

While Rule 706 of the Rules of Evidence allows for an expert to be deposed, defendants delayed for six months after the expert report was filed, over five weeks after the notice of the summary judgment hearing, and less than one week before the scheduled hearing to notice the expert's deposition. Defendants waived their right to depose the expert they consented to and failed to move for a continuance.

III. Conclusion

The defendants correctly note that the decision to continue a hearing on a motion for summary judgment lies within the sound discretion of the trial court. *Berkeley Federal Savings and Loan Assn v. Terra Del Sol*, 111 N.C. App. 692, 710, 433 S.E.2d 449, 458 (1993), *disc. rev. denied*, 335 N.C. 552, 441 S.E.2d 110 (1994). The record does not reflect that defendants moved for a continuance of the summary judgment hearing. Defendant has made no showing that the trial court abused its discretion in denying a continuance.

I would hold that the trial court did not abuse its discretion in failing to continue the summary judgment hearing. I would overrule defendants' assignments of error and affirm the judgment of the trial court. I respectfully dissent.